729 So.2d 1049 (1998)
STATE of Louisiana
v.
Bernard BRADFORD, Shanika Baxter, Kennon L. Bradford.
No. 98-K-1428.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1998.
Harry F. Connick, District Attorney, Holli Castillo, Assistant District Attorney, Jane Beebe, Assistant District Attorney, Bart Kelly, Assistant District Attorney, Orleans Parish, New Orleans, LA, Attorneys for Relator The State of Louisiana.
Arcenious F. Armond, Jr., Gretna, LA, Attorney for Respondent Shanika Baxter.
Court composed of Judge WILLIAM H. BYRNES III, Judge MIRIAM G. WALTZER and Judge PATRICIA RIVET MURRAY.
MURRAY, Judge.
The State of Louisiana seeks this Court's supervisory jurisdiction pursuant to the district court's findings of no probable cause as to defendants, Bernard Bradford and Shanika Baxter, and the suppression of evidence against them. For the following reasons we *1050 affirm the suppression of the evidence as to Ms. Baxter, and reverse as to Mr. Bradford.
On November 21, 1997, Kennon Bradford, Bernard Bradford, and Shanika Baxter were each charged with one count of possession with the intent to distribute cocaine, and one count of possession of heroin. Kennon Bradford was charged also with being a convicted felon in possession of a firearm. The defendants plead not guilty to all charges. After a preliminary hearing and hearings on motions to suppress the evidence, the district court found "no probable cause" as to Bernard and Shanika, and suppressed all evidence as to them. The court did find "probable cause" as to Kennon, and denied the motion to suppress filed on his behalf.
According to the affidavit for the search warrant in this case, on June 25, 1997, police officers received information from a reliable confidential informant concerning the sale of crack cocaine from 1731 Joliet Street. The confidential informant told police that Bernard "Bucky" Bradford was selling cocaine out of the front door of the residence on a twenty-four hour basis, and that he/she had witnessed such a sale within the last seventy-two hours. The confidential informant indicated that Bernard was the brother of Kennon Bradford, who had been arrested one week earlier pursuant to a search warrant executed at 1721 Joliet Street.
The confidential informant agreed to make an undercover buy. The police officers first searched the confidential informant, and provided him/her with marked currency. As the officers watched, the confidential informant approached the residence, and was met by a person matching the description of Bernard "Bucky" Bradford. After conversing for a few minutes, the confidential informant gave Bernard the marked currency, Bernard entered the house, and returned a few minutes later with an object he handed to the confidential informant. Upon meeting with the officers, the confidential informant produced the object, which was found to be a large rock of crack cocaine.
Based upon these facts, the officers obtained a search warrant. The next day, the officers set up a surveillance of the residence prior to executing the warrant. They observed what they believed to be two drug sales from the residence, one by Bernard and one by Kennon. The officers then executed the search warrant. As they approached, they noted a number of men on the porch, including Bernard and Kennon Bradford. When Bernard saw the officers, he threw several small objects into the side alleyway of the house. The men were detained, and one officer retrieved the objects thrown down by Bernard, that were determined to be several pieces of crack cocaine.
Other officers entered the house to execute the warrant, and found Shanika Baxter, Kennon and Bernard's sister, in the second room of the house. The search of the house revealed no drugs, but a gun was found under a mattress. In the backyard of the residence, the officers found a doghouse and a pit bull. Near the dog was a large piece of concrete, with a hole in it. The hole contained a brown paper bag containing a small amount of powdered cocaine and one unit of heroin. All three defendants were then placed under arrest and searched. Shanika had over $2,000 in her pocket, including the marked currency from the sale to the confidential informant the previous day.
At the hearing, one officer testified that Shanika and Bernard gave addresses different from 1731 Joliet, and no evidence was discovered to link them to that address. However, utility receipts in Kennon's name were seized from that address. He also testified that he saw only Kennon go down the alley to the backyard where the drugs were found. Another officer testified that Bernard denied that his street name was "Bucky," and that the confidential informant may have mentioned Kennon by his street name, "Greedy Man." The officer noted that both Bernard and Kennon were known by the officers due to prior arrests. He then positively identified Bernard as the man who sold cocaine to the confidential informant during the undercover buy.
Bernard Bradford testified that he did not sell cocaine to the confidential informant, either the day before or the day that the search warrant was executed. He denied throwing down any cocaine, or of having any *1051 knowledge of the drugs in the backyard. As to the day the search warrant was executed, Bernard admitted that there were several people on the porch, but it was because the people in the adjoining residence were making and selling food from their home. He said that when the police arrived, they ordered him and the other men on the porch to approach the police cars, and then they handcuffed each man. He testified that the officers asked who was known as "Bucky," and when his half-brother, Steven Brown, answered, the police ignored him. He said that he told the officers he was Bernard Bradford, and one of the officers stated: "We have Bucky." The officers called for "Bucky," and when his half-brother responded, they told him to return to the police car. Despite his half-brother's claim to be "Bucky," the police let him go and arrested Bernard. He testified that his street name was "Boo." He denied that the officer who testified prior to him had ever arrested him before. He insisted that his half-brother "Bucky" had tattoos on his arms.
The trial judge found no probable cause as to Bernard Bradford and Shanika Baxter. She then stated, "The Court, therefore, not finding probable cause suppresses any evidence as to them." This statement indicates that the trial judge confused the issue of whether there was probable cause as to the commission of the crimes charged with the issue of whether the evidence was admissible. The admissibility of evidence is dependent upon the circumstances of the search, not upon whether there was probable cause to believe a defendant had committed the crime.
The evidence seized in connection with the search warrant and incidental to arrest falls into three categories: 1) the gun and drugs seized in the backyard of the house pursuant to the search warrant; 2) the cocaine seized from the alleyway which Bernard allegedly threw down when the officers approached; and, 3) the money seized from Shanika and Bernard after their arrest once the drugs were found in the backyard and alleyway.

A. Evidence Seized Pursuant to Search Warrant
The gun found under the mattress and the cocaine and heroin found in the backyard were seized pursuant to the search warrant for 1731 Joliet Street. There is no indication that the trial court found the warrant to be insufficient. Indeed, our review indicates that the affidavit for the warrant sets forth sufficient probable cause for the warrant's issuance.
In State v. Page, 95-2401, p. 12 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709-710, writ denied, 96-2352 (La.2/21/97), 688 So.2d 522, this Court noted the standard for determining probable cause to support the issuance of a search warrant:
Louisiana Code of Criminal Procedure Article 162 provides that a search warrant may be issued "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant." In State v. Duncan, 420 So.2d 1105, 1108 (La.1982), our Supreme Court held that probable cause exists when:
the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. (citations omitted) See also, State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writ den., 531 So.2d 764 (La.1988).
The facts which form the basis for probable cause to issue a search warrant must be contained "within the four corners" of the affidavit. Duncan, supra at 1108. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480, 482 (La.1984), cert. denied, Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The reviewing Court must determine whether the "totality of the circumstances" set forth in the affidavit is sufficient to allow the magistrate to make a practical, common-sense decision *1052 whether, given all the circumstances set forth in the affidavit before him that there is a reasonable probability that contraband will be found. The duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed. Manso, supra at 482.
Here, the affidavit sets forth sufficient evidence to support the magistrate's finding of probable cause to believe there were illegal drugs at 1731 Joliet Street. Therefore, the warrant authorizing the officers to search 1731 Joliet and its curtilage was valid, and the gun, cocaine and heroin seized from inside the house and the backyard were lawfully seized.

B. The Cocaine Seized from the Alleyway
The officers also seized cocaine from the alleyway next to 1731 Joliet Street. They testified that as they approached the house, Bernard Bradford threw several objects into the alleyway. They retrieved the objects and found them to be rocks of crack cocaine. The trial court wrongly suppressed this evidence.
Evidence can be lawfully seized pursuant to the "abandoned evidence" exception to the warrant requirement. It has long been held that property cannot be seized legally if it was abandoned pursuant to an infringement of the person's property rights. However:
[i]f ... property is abandoned without any prior unlawful intrusion into a citizen's right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights.
State v. Belton, 441 So.2d 1195, 1199 (La. 1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). See also, State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208; State v. Tucker, 626 So.2d 707(La.), opinion reaffirmed and reinstated on rehearing, 626 So.2d 720 (La. 1993); State v. Laird, 95-1082 (La.App. 4 Cir. 5/8/96), 674 So.2d 425.
Here, the officers had only pulled up to the residence when they observed that Bernard saw them, and then threw down the rocks of cocaine. As such, there was no "unlawful intrusion" into Bernard's rights prior to his abandonment of the cocaine. Thus, the officers were justified in retrieving the cocaine Bernard abandoned. The trial court erred in suppressing this evidence.

C. The Evidence Seized from Bernard and Shanika:
Currency was seized from both Bernard and Shanika pursuant to the search inside the house. The trial court suppressed this evidence. However, the currency seized from Bernard would be admissible pursuant to the search incident to arrest exception to the warrant requirement. See State v. Wilson, 467 So.2d 503, 515 (La.1985), cert. denied, Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Johnson, 94-1170 (La.App. 4 Cir. 8/23/95), 660 So.2d 942, writ denied, 95-2331 (La.2/2/96), 666 So.2d 1092 and State v. Dibartolo, 95-3044 (La.2/2/96), 666 So.2d 1105.
In this case, the officers had just seen Bernard abandon objects determined to be cocaine, and therefore had probable cause to arrest him at that point for possession of cocaine. Pursuant to that arrest, they searched him and found the currency. Therefore, this currency was lawfully seized, and the trial court erred by suppressing it.
The currency seized from Shanika is a much closer question, even though part of the currency included the marked money used in the undercover buy the day before the arrest. The State argues that the officers were justified in searching Shanika because she was present when the search warrant was executed, and thus she could be searched pursuant to the warrant. The State erroneously cites State v. Williams, 95-1971 (La.App. 4 Cir. 11/16/95), 665 So.2d 112, in support of their argument. In Williams, the defendant was leaving the house when police arrived to execute a search warrant. The officers detained her, led her back inside the house, and searched her and her purse, where they found drugs. The trial court suppressed the evidence, *1053 and this Court affirmed, finding that the officers were not justified in searching the defendant merely because she was present when the search warrant was executed.
In so finding, this Court distinguished Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), where the Supreme Court found officers could detain a person who lived in the house to be searched. The Supreme Court noted that the resident's privacy rights already had been intruded upon by execution of the warrant. The Court stated: "Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id., 452 U.S. at 705, 101 S.Ct. at 2595.
This Court in Williams, also distinguished State v. Beals, 410 So.2d 745 (La.1982), which adopted and expanded the scope of Summers, supra. In Beals, the officers not only detained but also searched the resident of the house during the execution of a search warrant. Unlike the situation in Summers, where thedefendant was searched incident to his arrest for contraband found in the house, in Beals, the officers searched the defendant solely because he was present when the search warrant was executed. The Court upheld the search, citing both Summers and Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), where the U.S. Supreme Court held that officers could not search patrons of a bar who were present during the execution of a search warrant at the bar unless the State showed the bar was frequented by drug users or that the patrons were seen using drugs in the bar. The Beals court found that the search of the defendant was justified because the affidavit for the warrant noted that the resident was engaged in selling drugs from the residence, drugs were seen in plain view in the residence, and the officers had earlier searched the residence and found drugs. The Court noted these circumstances gave the officers cause to believe that the defendant had a "special connection with the premises" and that she was in possession of contraband. The Court then held that under these circumstances, "[a] warrant to search a place based on probable cause information that the resident of that place has committed or is committing a crime in that place authorizes the search of the resident as reasonably and necessarily within the scope of the warrant." Beals, 410 So.2d at 749.
In Williams, this Court found that neither Summers nor Beals was controlling because the only connection between the defendant and the residence being searched was her presence at the residence when the warrant was executed, and even that presence was tenuous because she was leaving when the officers arrived to execute the warrant. There was no indication that the defendant was involved in any illegal drug activity prior to her search, nor was there any contraband in plain view that could lead the officers to believe that she was involved. The issuance of the search warrant did not authorize the officers to search the defendant Williams, 95-1971 at pp. 4-6, 665 So.2d at 115.
Here, there was no indication prior to the execution of the warrant that Ms. Baxter was involved in any criminal activity or had any connection to the residence. The officers had received no information concerning her, nor was there any indication that they saw her at the residence at any previous time. In addition, no contraband was lying in plain view in the house. It was not until the officers entered the house to execute the warrant that they found her in the second room of the house. Ms. Baxter also gave a different address than the targeted residence, and the officers did not find any documentation linking her to the house being searched. Thus, Ms. Baxter's connection to the house was more similar to that of the defendant in Williams than those of the defendants in Summers or Beals. As such, the officers were not justified in searching her merely because she was present when the warrant was executed.
The State argues that the fact that Ms. Baxter had the marked money in her possession shows that she had a sufficient connection to the house to authorize the officers to search her as per Beals. However, the officers were not aware that she was in possession of the marked money until after they *1054 searched her. Thus, because the State failed to establish a sufficient connection between Ms. Baxter and the residence, as per Williams, the officers were not justified in searching her pursuant to the execution of the search warrant. The trial court correctly suppressed the evidence seized from Ms. Baxter.
Accordingly, the trial court's ruling suppressing the evidence seized from Ms. Baxter is affirmed. The ruling as to the evidence seized in connection with Mr. Bradford's arrest is reversed. The case is remanded for further proceedings.
WRIT OF CERTIORARI GRANTED; JUDGMENT ON MOTION TO SUPPRESS ON BAXTER AFFIRMED; JUDGMENT ON MOTION TO SUPPRESS BRADFORD REVERSED.