967 So.2d 458 (2007)
STATE of Louisiana
v.
Harry BOYER.
No. 2007-KK-0476.
Supreme Court of Louisiana.
October 16, 2007.
*460 Eric J. Hessler, for Applicant.
Charles C. Foti, Jr., Attorney General, Camille A. Morvant, II, District Attorney, Joseph Sidney Soignet, Assistant District Attorney, for Respondent.
KNOLL, Justice.[*]
This criminal case comes to us in a pretrial posture after the district court granted the defendant's motion to suppress the evidence seized pursuant to a stop and frisk of defendant, who was standing in the vicinity where a search warrant was to be executed. This set of facts implicates the problematic issues raised in a "search all persons" warrant, as well as the issues concerning the scope of a search pursuant to a Terry stop and frisk.
The court of appeal reversed the district court, implicitly finding the search was valid under the "plain feel" exception to the warrant requirement. For the following reasons, we reverse the court of appeal, finding that although the initial detention and Terry frisk was reasonable, the valid scope of the frisk was exceeded when the officer reached into the defendant's pocket to remove and visually inspect an item whose incriminating character was not immediately apparent and thus, not justified by the plain feel doctrine. Additionally, we hold the warrant did not authorize the search of this defendant, as to find otherwise would violate the Fourth Amendment's prohibition of general warrants. Finally, we find this search was not valid as a search incidental to arrest because probable cause did not exist to arrest defendant for the offense of resisting an officer.

FACTS AND PROCEDURAL HISTORY
From the record, the following facts are discerned. On the evening of July 17, 2006, the Lafourche Parish Drug Task Force, assisted by the Thibodaux Police Department, executed a search warrant at 470 Greenville Street in Raceland. The warrant was acquired on July 11, 2006, based upon an affidavit by Sergeant Paul LaGraize of the Lafourche Parish Drug Task Force.
*461 In the affidavit, Sgt. LaGraize declares the task force had identified Antonio Tillman as a mid to upper level crack cocaine distributor and had made a controlled buy of crack cocaine from him on October 20, 2005. In addition, at the end of May, 2006, Antonio Tillman's brother, Bryan Tillman, was arrested for possession of crack cocaine. Bryan Tillman informed the task force that Antonio was supplied by a source in Lafayette. Through several street operations, task force agents obtained information that a black male known as "Monkey Man" was selling crack cocaine for Antonio Tillman.
Sgt. LaGraize obtained information from several confidential informants that narcotic sales were being conducted from a van parked in the backyard of the property. On July 11, 2006, agents observed several men, including Antonio Tillman, congregating near an illegally parked car in front of 470 Greenville Street. The agents exited their vehicle, and Sgt. LaGraize observed a white female, a white male and a black male near the gray colored van in the backyard. Sgt. LaGraize observed the white male to be a known crack cocaine user, who had been arrested the same night as Bryan Tillman. The white female was also known to Sgt. LaGraize as a crack cocaine user. The black male identified himself as Benny Sanders, aka "Monkey Man." Sgt. LaGraize and Sgt. John Champagne observed, in plain view on the van floor, steel wool commonly used as a filter when smoking crack cocaine. Sgt. LaGraize also located in plain view a broken crack pipe and several plastic sandwich bags with the corners cut off. The plastic sandwich bags are commonly used to package illegal narcotics for sale.
When questioned by Sgts. LaGraize and Champagne, Antonio Tillman gave conflicting answers to the officers' inquiries concerning ownership of the van. Tillman also stated that Sanders lives in the van because he is homeless. Sgt. LaGraize observed an extension cord running from Tillman's residence (a mobile home) to the van. The residence bearing the municipal address of 470 Greenville Street is described in both the affidavit and warrant as a white trailer with maroon brown trim that is parallel to Green Street with a rectangular cement slab in the front yard.
Based upon the information in the affidavit, a search warrant was issued based upon the probable cause to believe that there was a quantity of illegal narcotics, money derived from their sale, drug equipment and records of illegal narcotic sales at 470 Greenville Street. The warrant stated:
This is, therefore, to command you, in the name of the State of Louisiana, with the necessary and proper assistance, in the day or night time [sic], or on Sundays or holidays, to (search the person(s). Curtilidges [sic] vehicles, and residence of 470 Greenville Street, Raceland, LA. At the time of the execution of this search warrant. (enter into or unto or any appurtenances thereto), and there diligently search for Illegal Narcotics, money derived from the sale of illegal narcotics, and narcotic equipment
At the time the warrant was executed, about a dozen officers arrived at the residence in a large Penske truck. The officers, which included SWAT team members in tactical gear, swiftly left the truck in a dynamic fashion to storm the property. Officer Eno Guillot of the Thibodaux Police Department testified that it was his function to ensure that persons found at the scene during the execution of the warrant did not leave. Sgt. LaGraize testified that several officers were instructed to make contact with individuals standing outside on the property to ensure that nobody shoots the officers entering the *462 residence and also to keep anyone from fleeing.
Officer Guillot observed a white male [later identified as the defendant] standing about twenty feet from the front right corner of the mobile home. Unbeknownst to the officers, defendant, an attorney, was there allegedly to meet with his client, Bryan Tillman. Officer Guillot was about thirty feet from the defendant. Officer Guillot testified that the defendant was holding a cell phone up to his ear with his right hand and appeared to be talking. When the defendant observed Officer Guillot, he brought the phone down and begin frantically digging in his left pocket. Officer Guillot ran toward the defendant, shouting "police" and ordering him to get on the ground and remove his hand from his pocket. Officer Guillot made these commands at least four times. In Officer Guillot's experience, weapons are usually involved with drugs, and he believed defendant could have had a small weapon in his pocket.
The defendant did not remove his hand from his pocket or get on the ground as commanded. Officer Guillot then grabbed the defendant's wrist, took the defendant to the ground and handcuffed him. Officer Guillot testified that the defendant was not combative and the defendant allowed him to do what he needed to do. The defendant never said anything to Officer Guillot, did not flee and he cooperated when Officer Guillot removed his hand from his pocket and took him to the ground. Officer Guillot conducted a patdown search of the defendant's clothing for a weapon and detected a large unknown object in defendant's pocket. He pulled the object out and discovered it was a cell phone.[1]
After removing the cell phone from the defendant's pocket, Officer Guillot continued his search. He admitted that he continued to search the defendant after he had recovered the cell phone, the singular item that could have been mistaken for a weapon. He felt "two small round objects" in the defendant's left pocket. He stated he could "not exactly" identify what those objects were. However, they felt "abnormal. In my past experiences they could have been mistaken for any kind of narcotic, crack rock, things like that." He admitted he really did not know what they were at the time. He removed all the items from defendant's left front pants pocket and visually inspected the two small round objects. He determined they were charcoal filters used for smoking crack.
By bill of information defendant was charged with possession of a controlled dangerous substance in violation of La. Rev.Stat. 40:967, as the charcoal filters/wire mesh allegedly tested positive for cocaine. Defendant moved to suppress the evidence, arguing the officers did not possess specific facts or rely upon specific circumstances to justify a belief that defendant was armed and dangerous so as to support a Terry limited frisk, and that defendant's mere proximity to drugs or presence on the property did not give rise to probable cause for arrest or reasonable suspicion to conduct a patdown of defendant's outer clothing.
*463 The State opposed the defendant's motion, arguing the seizure was valid under one or all of three different legal theories. First, the warrant to search the particular premises for contraband impliedly grants the limited authority to detain the occupants. Where a warrant was issued based upon information that the occupant of the residence participated in the sale of drugs shortly before the issuance of the warrant, the reasonable scope of the warrant extended to a search of the resident's pockets who was on the premises when the warrant was executed. State v. Beals, 410 So.2d 745 (La.1982). Second, the defendant's actions constituted a violation of La.Rev.Stat. 14:108, a knowing and willful interference and obstruction of the officers' attempt to execute the search warrant for which he was subject to arrest and thus, the search was incidental to arrest. Finally, the defendant's presence at the scene and his behavior gave the officers probable cause to believe defendant was in possession of contraband or a weapon.[2]
After the hearing on the motion to suppress, the trial court granted the motion. Relying upon Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the court ruled the warrant did not give the officers authority to search the defendant merely because he was present; there was no reasonable belief that defendant was involved in any criminal activity or was armed and dangerous. The court rejected the State's argument that the warrant authorized the search of the defendant. Neither did the court accept the State's reliance upon State v. Washington, 98-545 (La.App. 5 Cir. 12/16/98), 725 So.2d 587 and State v. Johnson, 534 So.2d 529 (La.App. 5 Cir.1988) to support its argument that defendant violated La.Rev.Stat. 14:108, resisting an officer. The court observed that the defendant in Washington disobeyed an officer's lawful commands to stop. The court found Johnson clearly distinguishable where the defendant was yelling obscenities and interfering with the execution of a search warrant. However, in the present case, the court could not find the defendant's actions of refusing to take his hand out of his pocket and get on the ground quickly enough, without more, to constitute the offense of resisting an officer. The court also rejected this search as a Terry search, implicitly finding there was no ground for a Terry frisk as there was no support to find defendant was committing or about to commit a crime. Moreover, even if it was a permissible Terry frisk, the unknown object was a cell phone and the officer certainly did not think it was a weapon.
The State sought supervisory writs from the court of appeal, which granted the writ and reversed. That court found that under the circumstances presented, Officer Guillot was justified in dispelling the fear that the defendant was in possession of a weapon. The appellate court found the search of the defendant's pocket and seizure of the contraband was valid considering that Officer Guillot testified that the two round objects felt "abnormal" and in his past experiences they "could have been mistaken for any kind of narcotic, crack rock."
We granted the defendant's writ application, State v. Boyer, 07-476 (La.4/27/07), 955 So.2d 670, to study the correctness, vel non, of the lower courts' resolution of these troubling issues.

DISCUSSION
The Fourth Amendment, applicable to the states through the Fourteenth *464 Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. The Fourth Amendment is not a guarantee against all searches and seizures, only those that are unreasonable. United States v. Sharpe, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). We will start our discussion with the issue of whether Officer Guillot had authority to search the defendant pursuant to the "search the person(s)" clause in the warrant.
Search All Persons
The United States Supreme Court has rejected the argument that search of persons present where a search warrant is being executed should be permitted when police have a reasonable suspicion that such persons are connected with drug trafficking and may be concealing the contraband. Ybarra, 444 U.S. at 94-96, 100 S.Ct. at 344. In Ybarra, police had obtained a warrant to search a tavern and the person of "Greg" the bartender for heroin, based on information from a reliable confidential informant. Upon entering the tavern, the officers announced their purpose and advised all those present they were going to conduct a cursory search for weapons. The officers frisked each one of the 9 to 13 customers present; one officer initially frisked Ybarra, feeling a cigarette pack with objects in it. The officer conducted a second frisk of Ybarra, removed the cigarette pack from Ybarra's pants pocket and found heroin. In finding the contraband recovered from Ybarra inadmissible, the Court reiterated that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Ybarra, 444 U.S. at 91, 100 S.Ct. at 342, citing, Sibron v. New York, 392 U.S. 40, 62-63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. Ybarra, 444 U.S. at 91, 100 S.Ct. at 342. Although the search warrant, issued upon probable cause, gave the officers authority to search the premises and "Greg," it gave them no authority to invade the constitutional protections possessed individually by the customers. Id., 444 U.S. at 92, 100 S.Ct. at 342. Moreover, the police executing the search warrant could not invoke Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to frisk a patron unless the officers had individualized suspicion that the patron might be armed or dangerous. Ybarra, 444 U.S. at 94, 100 S.Ct. at 343.
The Court held in Ybarra that probable cause was absent to search a tavern patron when the search warrant, which specified search of the tavern and the person of "Greg," was executed. As "open-ended" or "general" warrants are constitutionally prohibited by the Fourth Amendment, a fortiori, a warrant to search a place cannot normally be construed to authorize a search of each individual in that place. Ybarra, 444 U.S. at 92, n. 4, 100 S.Ct. at 342. However, the Court also noted that because the warrant for the tavern provided no basis for departing from this general rule, it "need not consider situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." Id. A leading commentator has observed this seems to indicate that there is no inherent defect in a search-all-persons-present warrant if the information supplied to the judicial officer supports the conclusion that it is probable anyone in the *465 described place when the warrant is executed is involved in the criminal activity in such a way to have evidence on his person. 2 Wayne R. LaFave, Search and Seizure, § 4.5(e), p. 601 (4th ed.2004).
Both Professor LaFave and (then) Judge Alito quoted with approval the following excerpt from State v. De Simone, 60 N.J. 319, 288 A.2d 849 (1972), concerning a "search all persons found therein" warrant:
On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts. A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.
* * * [W]ith regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by a physical nexus to the ongoing criminal event itself. In such a setting, the officer executing the warrant has neither the authority nor the opportunity to search everywhere for anyone violating a law. So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment. The evil of the general warrant is thereby negated. To insist nonetheless that the individual be otherwise described when circumstances will not permit it, would simply deny government a needed power to deal with crime, without advancing the interest the Amendment was meant to serve. De Simone, 288 A.2d at 850-51; Baker v. Monroe Township, 50 F.3d 1186, 1198-99 (3rd Cir.1995) (Alito, J., dissenting in part) (reh'g en banc denied); LaFave, § 4.5(e), p. 600.
Professor LaFave explicitly approved of the De Simone analysis, commenting:
Unquestionably, the De Simone rationale is correct. A search warrant authorization to search all persons found within a specifically described place is not lacking in particularity in the sense that the executing officer will be unable readily to determine to whom the warrant applies. Rather, the question is whether there is sufficient particularity in the probable cause sense, that is, whether the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person. If the evidence tendered to the magistrate supports such a conclusion, then the search-all-persons-present warrant is unobjectionable. If the evidence does not support such a conclusion, then the searches of those present find no justification in the search warrant.
LaFave, § 4.5(e), p. 601.
Baker, a split decision, was a § 1983[3] action arising from the detention and *466 search of Mrs. Baker and her teenage children, who approached her son's home for dinner just as police arrived to execute a "no knock" warrant for drugs. The merits of the case involved Fourth Amendment questions of what police may lawfully do with persons who happen to find themselves in the middle of a drug raid. Baker, 50 F.3d at 1190. Officers ordered the Bakers to "get down" as they rushed into the house. Some officers forced the Bakers to the ground, pointed guns at them, handcuffed them and searched Mrs. Baker's teenage son, Corey, and Mrs. Baker's purse. The entire panel agreed that there was no Fourth Amendment violation in ordering and pushing the Bakers to the ground, citing to Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) and Terry v. Ohio, concluding "the need to ascertain the Bakers' identity, the need to protect them from stray gunfire, and the need to clear the area of approach for the police to be able to operate efficiently all made it reasonable to get the Bakers down on the ground for a few crucial minutes." Baker, 50 F.3d at 1192.
However, with regard to the search of Corey Baker and Mrs. Baker's purse, the majority found that although the actions to control the Bakers while the search warrant was executed were justified under Michigan v. Summers and Terry v. Ohio, the search of Corey's and Mrs. Baker's persons was not supported by either line of cases. Id. at 1194. The majority specifically noted that the warrant did not refer to any and all "persons found therein" as did the warrants in State v. Sims, 75 N.J. 337, 382 A.2d 638 (1978) and De Simone. Baker, 50 F.3d at 1188, n. 1. The warrant did not contain a description, general or specific, of any person. Id.[4]
In the matter before us, the warrant itself fails to authorize the search of all persons. The warrant authorized the search of "person(s)[,] Curtlidges [sic], vehicles and residence of 470 Greenville Street, Raceland, LA." More importantly, the affidavit that established probable cause for the issuance of the warrant fails to establish any probable cause for the search of all persons present where the warrant was executed. Even if the affidavit before us established probable cause to search all persons, our research has not shown any cases upholding the search of persons based merely upon whether the warrant application established probable cause to believe that all persons found on the premises are involved in criminal activity, where the warrant itself fails to include authorization to search all persons.[5] *467 If the warrant itself fails to authorize a search of all persons found within a particularly described place, there is no showing that a neutral and detached judge has examined the affidavit and found probable cause to subject such persons to search. As so well stated by Justice Jackson: "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protections consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the . . . search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of the police officers." Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).
We reject the State's reliance upon State v. Beals, 410 So.2d 745 (La.1982), as we find that decision distinguishable. In Beals, this court addressed whether officers searching the outer clothing of the resident were reasonably within the scope of the warrant authorizing the search of the residence. Beals, 410 So.2d at 747. Relying upon the recently decided Michigan v. Summers decision, this court rendered a specific but narrow holding that under the facts and circumstances before it, where a warrant to search a residence for contraband is issued on probable cause based on information that the occupant of the residence participated in the sale of drugs at the residence three days prior to issuance of the warrant, the reasonable scope of the warrant extends to a search of the resident who is on the premises at the time it is searched. Beals, 410 So.2d at 748-49. Unlike Beals, Boyer was not a resident, the affidavit of probable cause supporting the warrant does not mention Boyer and the officers had no reason to believe Boyer had a special connection with the premises. This court in Beals only permitted a search of a resident, finding it reasonably within the scope of a warrant based on probable cause information that the resident of that place has committed or is committing a crime in that place. Beals, 410 So.2d at 749.
Nor do we find this court's decision in State v. Paster, 373 So.2d 170 (La.1979) applicable. In that case, the search warrant authorized the search of the residence occupied by the named defendant, his vehicle and "any person at the . . . described location at the time of the search." Paster, 373 So.2d at 176. This case did not concern a visitor to the property, but the resident of the property who was the target of the warrant. Defendant/resident approached the house with his suitcase as the search warrant was being executed. Defendant challenged the seizure of marijuana from the suitcase, averring the seizure was outside of the scope of the warrant. There was conflicting testimony concerning whether defendant entered the house with the suitcase. The trial court held the defendant had entered his residence with the suitcase in his hand before he backed out and dropped the suitcase *468 five or so feet from the front door. In this court's review of the conviction, it held that search warrant, if valid,[6] gave officers authority to search the named occupant of the residence and, by implication, objects in his immediate control and possession, such as a purse or briefcase, if the occupant arrived at his residence or was in his residence at the time of the search. Id. There is nothing in the opinion that supports the State's argument that Paster allows the search of "any person" found on the premises where a search warrant is executed. Moreover, the warrant before us does not authorize the search of "any" person but only of "person(s)."
The warrant does not particularly describe the persons to be searched as required by the Fourth Amendment and La. Code Crim. Pro. art. 162. It only authorizes the search of "the person(s). Curtlidges [sic], vehicles, and residence of 470 Greenville Street." It does not authorize the search of all persons or all persons found therein or thereon or any persons. Neither the warrant nor the underlying affidavit provide probable cause to believe that anyone standing twenty feet from the mobile home had a physical nexus to the ongoing criminal events. The affidavit supporting the warrant avers that the Lafourche Parish Drug Task Force made a controlled purchase of crack cocaine from Antonio Tillman on October 20, 2005. There is no indication where this controlled purchase was made, thus it is unknown if the sale occurred in the mobile home, on the premises or at another location. The affidavit further declares that Sgt. LaGraize obtained information from several confidential informants that the buyers of the crack cocaine would exit their vehicles and go to the gray van parked in the backyard of 470 Greenville Street and either Antonio Tillman or Benny Sanders aka "Monkey Man" would sell the crack cocaine to them. The affidavit further provides that when agents were patrolling the area on July 11, 2006, and stopped at 470 Greenville Street because of several people congregating around an illegally parked vehicle, including Antonio Tillman, they observed known drug users near the gray van, along with Benny Sanders. The agents further observed, in plain view, drug paraphernalia inside the van. Considering the totality of the information supplied in the affidavit, there is insufficient particularity in the probable cause sense to support the conclusion that anyone standing twenty feet from the mobile home when the warrant was executed is involved in the criminal activity in such a way to have evidence on his person. From the affidavit, it appears that the drug sales occurred in or near the abandoned van. The State produced no evidence that the defendant was anywhere near the abandoned van, which was in the backyard of the property. Officer Guillot testified that the defendant was standing about twenty feet from the front right corner of the mobile home. Moreover, there is nothing in the underlying affidavit or warrant itself to indicate the judge issued a warrant to search unnamed persons because their mere presence at this particular location would implicate them as a participant in a crime. In deciding the motion to suppress, the trial court specifically observed "[t]o characterize the language of the search warrant as unartful would be a compliment." Although the trial court found the warrant was sufficient to place law enforcement at the location, the court found the warrant did not authorize the search of *469 everybody within the vicinity of the residence.
Under these circumstances, where the warrant does not authorize the search of all or any persons, and where the defendant was neither inside the residence to be searched nor near the area of the abandoned van where all the drug activity is alleged to have occurred, we cannot find this defendant was subject to search of his person pursuant to this search warrant.
Although we find this warrant did not authorize the search of the defendant, we must now address whether this defendant, as a non-occupant of the property subject of the search warrant, could lawfully be temporarily seized and subject to a Terry frisk.
Terry Stop and Frisk
In Ybarra, the Supreme Court was asked to find the first patdown search of Ybarra constituted a reasonable frisk for weapons under Terry. Ybarra, 444 U.S. at 92, 100 S.Ct. at 343. The Court concluded even the initial frisk of the tavern patron was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief the Court has invariably held must form the predicate to a patdown of a person for weapons. Id., 444 U.S. at 92-93, 100 S.Ct. at 343. The Court observed that the lighting in the tavern was sufficient for the police to see the customers, that the police neither recognized Ybarra as a person with a criminal history nor had any particular reason to believe he might be inclined to assault them, and further, Ybarra's hands were empty and he made no gestures or actions indicative of an intent to commit an assault. Id., 444 U.S. at 93, 100 S.Ct. at 343. The Court held the "narrow scope" of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place. Id., 444 U.S. at 94, 100 S.Ct. at 343 (emphasis added).
In the case sub judice, the trial court, in ruling on the motion to suppress, implicitly found no reasonable belief for a Terry stop and frisk of the defendant. The trial court found this matter to be analogous to Ybarra, focusing solely upon Officer Guillot's testimony on cross-examination that he did not draw his weapon on the defendant because he did not see a weapon. The court also relied upon State v. Bradford, 98-1428 (La.App. 4 Cir. 12/9/98), 729 So.2d 1049, finding it holds a search warrant does not grant authority to search anyone who happens to merely be present at the scene.
This issue concerns whether, under the totality of the circumstances, the officer had a reasonable and articulable suspicion to conduct a protective frisk of the defendant, who was present at the scene.
Under the Fourth Amendment, a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or about to commit a crime. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); State v. Temple, 02-1895, p. 4 (La.9/9/03), 854 So.2d 856, 859; State v. Sims, 02-2208, pp. 4-5 (La.6/27/03), 851 So.2d 1039, 1043. In determining whether the police possessed the requisite "`minimal level of objective justification'" for an investigatory stop based on reasonable suspicion of criminal activity, United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)(quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), reviewing courts "must look at the `totality of the circumstances' of each case," a process *470 which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Temple, 02-1895 at p. 5, 854 So.2d at 860 (quoting United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002)) (internally quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
Reviewing the totality of circumstances in this case, we find the trial court erred in its determination that there was no reasonable, articulable suspicion for an investigatory stop of the defendant. The execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. Michigan v. Summers, 452 U.S. 692, 703, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981). The risk of harm to both the police and citizens is minimized if the officers routinely exercise unquestioned command of the situation. Id. The facts show this was the execution of a search warrant for drugs; the officers had obtained the warrant based upon probable cause that the resident of 470 Greenville Street was a mid to upper level drug dealer and that drugs were sold from an abandoned van parked in the backyard of the property. Sgt. LaGraize had instructed the officers to make contact with individuals standing outside on the property to ensure that the officers would not be shot. Defendant was standing about twenty feet from the residence; Officer Guillot testified that although he did not know whether defendant was standing on the property to be searched, defendant was close enough that Officer Guillot believed defendant was on the property. Officer Guillot also testified it was his experience that weapons are usually involved with drugs.
Given this totality of circumstances, we find that Officer Guillot, based upon his experience and training, possessed the requisite minimal objective basis to detain defendant "in order to determine his identity or maintain the status quo momentarily while obtaining more information," the hallmark of an investigatory stop. State v. Porche, 06-312, p. 6 (La.11/29/06), 943 So.2d 335, 338-39; see Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585.
The fact that defendant was apparently on private property at the time of the detention does not alter our analysis. Under the Terry line of cases, the reasonableness of the intrusion is the touchstone, balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's actions to his reason for stopping the suspect. See United States v. Sharpe, 470 U.S. 675, 682-83, 105 S.Ct. 1568, 1573-74, 84 L.Ed.2d 605 (1985); Baker, 50 F.3d at 1192. Here, the need to ensure the safety of the officers and citizens while the SWAT team was swarming the property, the need to exercise unquestioned command of the situation and the need to ascertain the identity of anyone present and temporarily maintain the status quo all made it reasonable to detain Boyer. Other jurisdictions, when confronted with the detention of people going to or coming from a residence where a warrant is being executed, have held law enforcement may temporarily detain these persons. United States v. Maddox, 388 F.3d 1356, 1362 (10th Cir.2004), cert. denied sub nom. Maddox v. United States, 544 U.S. 935, 125 S.Ct. 1689, 161 L.Ed.2d 504 (2005); United States v. Bohannon, 225 F.3d 615, 616 (6th Cir.2000)(reh'g en banc denied); Baker, 50 F.3d at 1192; Cotton v. State, 386 Md. 249, 872 A.2d 87, 92 (2005), cert. denied, 546 U.S. 885, 126 S.Ct. *471 212, 163 L.Ed.2d 190 (2005); People v. Glaser, 11 Cal.4th 354, 45 Cal.Rptr.2d 425, 902 P.2d 729, 734 (Ca.1995). We find this situation analogous to the one before us in Porche, supra, wherein we held the officers had the requisite minimal basis for an investigatory stop, where visitor/defendant arrived at the door of the residence where police were conducting a fast-paced investigation in which the ostensible victim/resident had turned into a narcotics investigation suspect. Porche, 06-312 at pp. 5-6, 943 So.2d at 338. We further find the trial court's reliance upon Bradford misplaced. That court held officers were not justified in searching the non-resident defendant merely because she was present when the search warrant was executed. Bradford, 98-1428 at p. 10, 729 So.2d at 1053. We have already determined the warrant here did not authorize a search of this particular defendant. However, when executing a search warrant, officers may briefly detain persons who are present, regardless of their occupancy status with regard to the subject property, if the police possess the minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity.
Having upheld the validity of the investigatory stop, we now determine whether the patdown of defendant's outer clothes was reasonable. The reasonableness of a frisk conducted as part of a lawful investigatory stop is governed by an objective standard. State v. Dumas, 2000-862, p. 2 (La.5/4/01), 786 So.2d 80, 81. The relevant question is not whether the police officer subjectively believes he is in danger, or whether he articulates that subjective belief in his testimony at a suppression hearing. Id. at pp. 2-3, 786 So.2d at 81-82. A police officer may frisk the suspect only if a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of other was in danger. Terry, 392 U.S. at 27, 88 S.Ct. at 1883; Sims, 02-2208 at p. 6, 851 So.2d at 1043. "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 27, 88 S.Ct. at 1883; see also Sims, 02-2208 at p. 6, 851 So.2d at 1044.
Under the totality of the circumstances, we find the officer had a reasonable, objective and particularized basis for conducting a patdown frisk of defendant. It is long established the execution of a warrant to search for drugs is the kind of transaction that may give rise to sudden violence. Summers, 452 U.S. at 703, 101 S.Ct. at 2594. Officer Guillot testified that it was his experience that weapons were usually involved with drugs. He testified that he ordered the defendant to remove his hand from his pocket because he could have had a weapon. Officer Guillot's was trained, for the purpose of officer safety, to order persons in these situations to remove their hands from their pockets. We contrast this with what the Court observed in Ybarra, supra. In finding the initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, the Court noted, inter alia, that the officer testified Ybarra's hands were empty, he gave no indication of possessing a weapon and acted generally in a manner that was not threatening. Ybarra, 444 U.S. at 93, 100 S.Ct. at 343. In the case sub judice, the defendant's hand was not visible and a reasonably prudent person would be warranted in believing that his safety or that of others was in danger. See also, Sims, 02-2208 at p. 8, 851 So.2d at 1045 (In *472 finding it was not objectively reasonable for the officers to believe defendant could have been armed and dangerous, factors included that defendant did not make any furtive gestures or place his hands in his pockets.); State v. Rabon, 2000-935, p. 1 (La.6/30/00), 764 So.2d 944, 945 (an otherwise inexplicable failure to remove a hand from a pocket may give rise to reasonable suspicion for a weapons search). The trial judge erred in relying upon Officer Guillot's testimony that he did not draw his weapon because he did not see a weapon to implicitly find there was no reasonably objective belief for the stop and frisk. We find that a suspect's hand in his pocket, under the circumstances presented, supports a reasonable belief the suspect might have a weapon and Officer Guillot's experience and training that searches of drugs often correlate with weapons provide a reasonable and objective basis to frisk this defendant. Officer Guillot only testified he did not draw his weapon because he did not see a weapon. Moreover, the relevant question is not whether the officer subjectively believed he was in danger or articulates that subjective belief in his testimony, Dumas, 2000-862 at pp. 2-3, 786 So.2d at 81-82, but whether a reasonably prudent person in the circumstances would be warranted in his belief that he or others were in danger. Terry, 392 U.S. at 27, 88 S.Ct. at 1883; Dumas, 2000-862 at p. 3, 786 So.2d at 82.
However, our analysis does not end here. We must decide whether Officer Guillot's frisk of the defendant exceeded the scope of Terry. Specifically, we are faced with the issue of whether the seizure of the contraband was justified under the plain feel exception to the warrant requirement.
"Plain Feel" Exception
In Minnesota v. Dickerson, 508 U.S. 366, 371, 113 S.Ct. 2130, 2134, 124 L.Ed.2d 334 (1993), the Supreme Court addressed whether nonthreatening contraband detected through the sense of touch during a Terry patdown may be admitted into evidence. Analogizing to the "plain view" doctrine, which provides that if police are lawfully in a position to view an object and its incriminating character is immediately apparent they may seize it without a warrant, see, Horton v. California, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2307-08, 110 L.Ed.2d 112 (1990), the Dickerson Court held if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; its warrantless seizure is justified by the same practical considerations that inhere in the plain-view context. Dickerson, 508 U.S. at 375-76, 113 S.Ct. at 2136-37. Applying the rule it announced to the facts before it, the Court found the officer's continued exploration of the defendant's pocket after having concluded that it contained no weapon was unrelated to the sole justification of the search under Terry: the protection of the officers and others nearby. Dickerson, 508 U.S. at 378, 113 S.Ct. at 2138-39. Where an officer who is executing a valid search for one item seizes a different item, the Court rightly "has been sensitive to the danger . . . that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will." Dickerson, 508 U.S. at 378, 113 S.Ct. at 2138 (quoting Texas v. Brown, 460 U.S. 730, 748, 103 S.Ct. 1535, 1546-47, 75 L.Ed.2d 502 (1983)(Stevens, J. concurring in judgment)). The Court observed that although Terry entitled the officer to place his hands upon the defendant's jacket, the incriminating character of the object was not immediately apparent to the officer *473 and he determined the item was contraband only after conducting a further search, one not authorized by Terry or any other exception to the warrant requirement. Dickerson, 508 U.S. at 379, 113 S.Ct. at 2139. Because the further search of the defendant's pocket was constitutionally invalid, the seizure of the cocaine was also unconstitutional. Id.
In granting the writ reversing the trial court's grant of the motion to suppress, the court of appeal implicitly found the evidence from the defendant's pocket was seized pursuant to the "plain feel" exception to the warrant requirement. We disagree.
The record shows that Officer Guillot's patdown of the defendant revealed an object that could have been a weapon, but turned out to be a cell phone. However, after removing the object (cell phone) and determining it was not a weapon, Officer Guillot continued to search the defendant. During the patdown, Officer Guillot also felt "two small, round, objects." He testified that they felt "abnormal" and from his experience could "have been mistaken for" narcotics or crack. He also admitted he could "not exactly" tell what those two round objects were. Officer Guillot reached into defendant's pocket to remove the item and made a visual inspection of the item, which is the evidence the State now charges defendant with unlawful possession of in violation of La.Rev.Stat. 40:967. We find from this record that this search of the defendant, after the officer had removed the object that could have been a weapon, exceeded the scope of Terry and its fruits must be suppressed. See, Dickerson, 508 U.S. at 373, 113 S.Ct. at 2136. Because the incriminating character of the charcoal filters/wire mesh was not "immediately apparent," the subsequent seizure cannot be justified by the plain feel doctrine. See, Dickerson, 508 U.S. at 379, 113 S.Ct. at 2139. In order for evidence seized under the plain feel exception to the warrant requirement, the officer must have probable cause to believe that the item is contraband before seizing it. Dickerson, 508 U.S. at 376-77, 113 S.Ct. at 2137-38. The Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures. Dickerson, 508 U.S. at 376, 113 S.Ct. at 2137. We find that in this matter before us, as the Court found with regard to Dickerson, "the officer's continued exploration of [defendant's] pocket after having concluded that it contained no weapon was unrelated to `[t]he sole justification of the search [under Terry:] . . . the protection of the police officer and others nearby.'" Dickerson, 508 U.S. at 378, 113 S.Ct. at 2138-39 (quoting Terry, 392 U.S. at 29, 88 S.Ct. at 1884).
Search Incidental to Arrest
We now turn to the State's final argument that this search and seizure was valid as a search incidental to arrest. The State avers the defendant's behavior constituted the offense of resisting an officer in violation of La.Rev.Stat. 14:108, for which the defendant could have been arrested and searched incidental to arrest. La.Rev.Stat. 14:108 provides, in pertinent part:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving *474 process is acting in his official capacity.
The gravamen of the crime of resisting an officer consists of the intentional obstruction of an officer acting in his official capacity. State v. Patterson, XXXX-XXXX, p. 1 (La.3/28/01), 783 So.2d 1243; State v. Nix, 406 So.2d 1355, 1356 (La.1981). The trial court specifically rejected the State's analogy of this matter to State v. Washington, 98-545 (La.App. 5 Cir. 12/16/98), 725 So.2d 587 and State v. Johnson, 534 So.2d 529 (La.App. 5 Cir.1988), specifically finding that Boyer did not resist an officer merely by refusing to take his hand out of his pocket as he is being approached in a search warrant situation by a take down team. The trial court specifically found, and the record supports this finding, that the defendant did not flee and did not fight. Considering that the testimony established this search warrant was executed in a "dynamic" fashion, with officers, some in SWAT gear, quickly swarming the property, and Officer Guillot's testimony that the defendant did not fight him and did not resist him when Officer Guillot "took down" the defendant and searched him, we find no error in the trial court's determination that the defendant did not commit the offense of resisting an officer.
The State's reliance upon Washington and Johnson is misplaced. In Washington, the officers were in the process of arresting the defendant's companion and seizing contraband. One of the suspects attempted to conceal a gun on his person. Washington ignored the officer's orders to stop; he swiftly walked away. The appellate court found Washington's actions interfered with the officer's attempts to perform their duties when he entered the house in contravention of the officer's direct order, and this constituted interference or obstruction within the meaning of La.Rev.Stat. 14:108. Washington, 98-545 at pp. 6, 8, 725 So.2d at 590-91. Under the facts before us, we do not find the defendant's refusal to remove his hand, as Officer Guillot is quickly moving toward him over a distance of thirty feet, the equivalent of ignoring an officer's order to stop and walking away to enter a house.
We also agree with the trial court that Johnson is clearly distinguishable. That case shows that as four officers were attempting to execute a search warrant on a suspected narcotics dealer, a crowd gathered and backup officers arrived. As officers attempted to search the suspect, Johnson begin to yell obscenities and moved toward one of the officers, despite being asked by an officer to step back. The officer asked Johnson to leave the scene, but she responded by yelling more obscenities and continuing toward one of the officers. The appellate court held that Johnson's continued attempts to interfere with the officer executing the search warrant while yelling profanities and refusing to leave when requested to do so by an officer was sufficient to justify the conviction of resisting an officer. Johnson, 534 So.2d at 531. The defendant before us did not yell obscenities; the trial judge found the defendant did not run, did not say anything and did not resist when his hand was removed from his pocket and he was handcuffed. These facts do not constitute the offense of resisting an officer.
In its brief, the State also relies upon State v. Daniels, 25,833 (La.App. 2 Cir. 3/30/94), 634 So.2d 962, to support its argument that, like Daniels, defendant's refusal to remove his hand from his pocket was resistance to a Terry frisk and thus constituted the offense of resisting an officer. Again we find the State relies upon a case that is clearly distinguishable.
In that case, officers had reasonable suspicion to detain Daniels in his vehicle. Daniels exited the vehicle, but refused a *475 request to remove his hand from his front pants pocket. However, he also disdained an order to stop and begin walking away. The officers were aware that Daniels had possessed a pistol only a few days earlier. When an officer attempted to extract Daniels hand from the pocket, Daniels resisted this effort by jerking his arm away and continuing to walk away, despite the officers' counter commands. The court held the defendant's belligerent actions in pulling away from the patrolman constituted a preclusion of the attempted lawful frisk, an interference with the second aspect of Terry. Daniels, 25,833 at pp. 5-6, 634 So.2d at 965. In contrast, we observe defendant before us did not resist when Officer Guillot removed his hand from the pocket and did not flee or walk away. Defendant's actions could not be characterized as belligerent. Given Officer Guillot's testimony that he made the commands while he ran towards the defendant, who was only thirty feet away from him, only a few seconds could have elapsed between Officer's Guillot's orders to "take your hand out of your pocket, get on the ground" before Officer Guillot forcibly took the defendant, who did not resist, to the ground. In this situation, the State did not have probable cause to arrest the defendant for the crime of resisting an officer. La.Rev.Stat. 14:108 does not criminalize the refusal to move when approached by a law enforcement officer unless he is actually obstructed or interfered with in performing his official duties in attempting to effect a lawful arrest, seizure or service of process. State v. Huguet, 369 So.2d 1331, 1333 (La.1979). In sum, we cannot say the defendant's actions in these circumstances, without more, intentionally impeded the officers' execution of the search warrant so as to constitute the offense of resisting an officer. Thus the search of the defendant was not a valid search incidental to arrest.

CONCLUSION
For the foregoing reasons, we find the court of appeal erred in reversing the trial court. We cannot find this search warrant authorized the search of everyone within the vicinity of the residence as that would violate the Fourth Amendment's proscription against general warrants. Although the initial detention and Terry frisk of the defendant, under the totality of the circumstances, was reasonable, the subsequent search and seizure of the contraband did not meet the plain feel exception to the warrant requirement. Nor was this search justified as one incident to arrest, as the defendant's actions did not constitute the offense of resisting an officer.

DECREE
The judgment of the court of appeal is reversed and the judgment of the trial court is reinstated. This case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.
REVERSED and REMANDED.
TRAYLOR, J., concurs in the result and assigns reasons.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., dissents and assigns reasons.
This case can be easily distinguished from Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238(1979). In Ybarra, the police officers obtained a warrant to search a tavern and the person of "Greg", the bartender, as an excuse to frisk all of the customers who were present. Here, a warrant was issued to search the person(s), curtilages, vehicles, and the residence of 470 Greenville, Street, in Raceland, Louisiana. According to the majority, the warrant "does not authorize *476 the search of "any" person but only of person(s)". In my view, this is a distinction without a difference. By including the plural term, persons, these police officers were authorized to search any persons found on the premises.
I cannot subscribe to the majority's unjustifiable narrowing of the rule of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The majority, would require a "particularized and individualized suspicion that a person is armed and dangerous as a condition to a Terry search". Ybarra, supra. This goes beyond the rationale of Terry and overlooks the practicalities of a situation which often confronts officers executing a valid search warrant. Here, the Court's holding operates as but a further hindrance to the already difficult effort to police the narcotics traffic which takes such a terrible toll on human lives. When the warrant was executed, a dozen SWAT team members in full tactical gear, swarmed the targeted residence to secure the premises.
Given the circumstances in this case, i.e. this was a high crime area, the persons targeted had reputations of engaging in illegal drugs activities, it does not seem a far stretch for police officers to make an investigatory stop of an individual who was present on the scene where the search warrant was being executed.
The Terry Court recognized that a balance must be struck between the privacy interest of individuals and the safety of police officers in performing their duty. The jurisprudence has always held that when police officers execute a search warrant for narcotics in a place of known narcotics activity, they may protect themselves by conducting a Terry search. Police Officers are not required to assume that they will not be harmed by an unknown individual who just happens to be in the area where the search warrant is being executed. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, supra, 392 U.S., at 27, 88 S.Ct., at 1883.
Here, the defendant ignored the police officer's command to remove his hand from his pocket, which required the officer to repeat the command four times. Officer Eno Guillot testified that he observed the defendant standing approximately twenty feet from the residence bearing the address of 470 Greenville Street, Raceland, Louisiana. The defendant refused to remove his hand from his pocket or get on the ground as commanded. The officer grabbed the defendant's wrist, forced him to the ground, and handcuffed him.
Officer Guillot then conducted a safety patdown search of the defendant for a weapon, and detected a large unknown object in defendant's pocket. Initially, the officer removed a cellular phone from defendant's pocket. The officer testified that he continued to search the defendant and felt "two small round objects" in the defendant's left pocket. The Officer determined that the two small round objects were charcoal filters used for smoking crack.
In State v. Beals, 81-1497 (La.1/29/82), 410 So.2d 745, this Court held that where a warrant to search the residence for contraband was issued based on information that the occupant of the residence participated in the sale of drugs at the residence three days prior to the issuance of the warrant, reasonable scope of the warrant extended to a search of the pockets of the outer clothing of the resident of the premises who was on the premises at the time it was searched. The instant case, aligns with this Court's holding in Beals. Thus, I *477 would affirm the decision of the court of appeal.
TRAYLOR, J., concurs and assigns reasons.
I concur in the result reached by the majority. The officer was entirely justified in performing the Terry frisk of the defendant; however, only because there was no evidence presented in court that the officer had probable cause to believe that the items he felt in the defendant's pocket were contraband did the search exceed the scope of Terry and require the evidence to be suppressed.
NOTES
[*] Retired Judge Philip C. Ciaccio assigned as Associate Justice ad hoc, sitting for Associate Justice John L. Weimer, recused.
[1] Officer Guillot's testimony on cross-examination suggests that officers recovered two cell phones from the defendant although it appears that only one phone was recovered during the search of his person. The officer stated that defendant had a cell phone in his right hand and was apparently using it when he saw the officer approach. Defendant then took the "phone from his ear and br[ought] it down with him to his pocket." However, it is not clear from the officer's testimony whether this cell phone was the second one recovered from defendant or the one recovered from his left pants pocket when the officer patted him down. The officer testified that the defendant had two cell phones.
[2] This last argument of the State is properly encompassed within our address of the scope of the warrant with regard to this defendant and the Terry frisk of the defendant.
[3] 42 U.S.C. § 1983, civil action for deprivation of rights.
[4] Judge Alito, however, found that the validity of the warrant depended on whether the search warrant application established probable cause to believe that all persons found on the premises of the apartment were involved in the regular drug activity that had been going on at that location, Baker, 50 F.3d at 1199, despite the majority's finding the only common-sense interpretation of the warrant was that no one ever bothered to complete it to include specified persons as well as premises; the "flawed" warrant did not demonstrate that the magistrate determined search of any particular person to be justified. Baker, 50 F.3d at 1188, n. 1.
[5] Diligent research has failed to disclose any opinion even addressing an argument that the search did not violate the Fourteenth Amendment because the application established probable cause even though the warrant did not contain reference to "all persons" or persons therein or persons present. De Simone, 288 A.2d at 850 (warrant directing a search of a specifically described automobile "and all persons found therein"); Sims, 382 A.2d at 641 (whether a warrant permitting police to search the premises of a service station and any persons found therein was supported by probable cause); State v. Kinney, 83 Ohio St.3d 85, 698 N.E.2d 49, 50 (1998), cert. denied sub nom. Kinney v. Ohio, 526 U.S. 1007, 119 S.Ct. 1148, 143 L.Ed.2d 214 (1999)(warrant authorizing search of the apartment and persons therein); State v. Allard, 674 A.2d 921, 922 (Me.1996) (warrant provision allowing search of any and all persons found upon said premises); State v. Johnson, 243 Neb. 758, 502 N.W.2d 477, 480 (1993) (warrant commanded search of the motel room, a named suspect and persons unknown); Commonwealth v. Smith, 370 Mass. 335, 348 N.E.2d 101, 102 (1976), cert. denied sub nom. Smith v. Massachusetts, 429 U.S. 944, 97 S.Ct. 364, 50 L.Ed.2d 314 (1976)(warrant authorizing the search of any person present in an apartment upheld).
[6] That matter was remanded to determine the validity of the affidavit supporting the warrant.