TERRI F. LOVE, Judge.
Defendant was convicted of possession of cocaine, and sentenced to seven years without benefit of probation or suspension of sentence. On appeal, defendant alleges the trial court erred by denying his motions to suppress evidence seized from his person and his residence, denying his motion for a mistrial, and imposing a sentence that was excessive. For the reasons assigned below, we affirm the defendant’s conviction and sentence.

FACTS AND PROCEDURAL HISTORY

Detective Robert Ferrier (“Detective Ferrier”), of the New Orleans Police Department Sixth District Narcotics Unit, testified that on May 4, 2000, he received information from a confidential informant that an individual known as “Red”, who walked with a limp and drove a gray Chevy Corsica, would arrive at the corner of Lasalle and Josephine Streets and sell cocaine while sitting in front of an abandoned house. The informant also told the detective that “Red” kept more illegal drugs inside his residence at 8025 Toleda-no Street. Based on the informant’s information the detective decided to conduct surveillance the next day.
On May 5, 2000, Detective Ferrier drove to 3025 Toledano and observed a gray Chevy Corsica parked in front of the residence. The detective then drove to the intersection of Lasalle and Josephine Streets. Detective Ferrier arrived at the | ¡¡location at approximately 9:25 a.m., and parked his surveillance van nearby. Within ten minutes of his arrival the detective observed the gray Chevy Corsica pull up and park in the middle of the 2100 block of Lasalle Street. The detective observed a man, later identified as the defendant Donald Robertson (“Robertson”), step out of the vehicle, walk across the street, and go to a shed at the rear of an abandoned shotgun style house. The front of the house faced Josephine Street located at the corner of Lasalle Street. Detective Ferrier testified that when he observed Robertson walk to the shed he walked with a distinct limp. Detective Ferrier further testified through his binoculars he observed Robertson remove a plastic bag from his pants pocket, and place it on the *634 sidewalk at the rear of the shed. The detective then observed Robertson walk over and sit on some steps located on the Lasalle Street side of the abandoned house. Detective Ferrier testified he then observed Robertson conduct two separate drug transactions with two different unknown males. In each of the transactions, the unknown males approached Robertson; they had a brief conversation; the unknown male handed Robertson currency; Robertson walked to the rear shed area retrieved a small object; and Robertson returned giving the object to the unknown male who then walked away. Detective Ferrier testified after he observed Robertson conduct the two transactions Robertson was then joined by a third male, later identified as Albert Holloway, Jr. (“Holloway”). Robertson and Holloway walked to the rear shed area and retrieved the plastic bag put there by Robertson. Robertson showed the bag to Holloway, and Robertson then removed a small object from the bag and placed it in his right sock. Robertson then walked over to the Chevy Corsica while Holloway sat on a red milk crate next to the steps Robertson had been sitting on. |4 Detective Ferrier testified he observed Holloway conduct a drug transaction in the same manner as Robertson had done.
Detective Ferrier then observed a woman, Rochelle Bannister (“Bannister”), join Holloway and sit on the steps. Detective Ferrier contacted Detective Kyle Hinrich (“Detective Hinrich”) to pick him up at a designated location. The two detectives approached the three individuals, conducted pat down searches, and informed the three they were under investigation for drug violations. The detectives also advised the three individuals of their Miranda rights. Detective Hinrich then retrieved a zip-loc bag containing a white powder-like substance from Robertson’s sock. Detective Hinrich walked to the shed area and retrieved a plastic bag containing seven smaller bags also containing a white powder-like substance. The detectives then placed Robertson and Holloway under arrest, and read them their rights. The detectives conducted a search incident to arrest on Robertson and Holloway, and recovered two hundred sixty-seven dollars, a cell phone, a walkie-talkie, and a set of keys from Robertson. Seventy-two dollars were recovered from Holloway. Bannister was released on the scene.
After Robertson and Holloway were arrested, Detective Ferrier contacted his supervisor, Sergeant Stephen Gaudet (“Sergeant Gaudet”), and advised him of the need for a search warrant for 3025 Toleda-no Street. Sergeant Gaudet obtained the keys taken from Robertson and verified that they in fact opened the door to the Toledano residence. Sergeant Gaudet called for a narcotics unit, and Detective Raymond Veit (“Detective Veit”) and Detective Andy Roccaforte went to Robertson’s residence.
Detectives Ferrier and Hinrich obtained the search warrant and returned to the Toledano address. Once there, the officers called for the assistance of a |ficanine unit with a drug-sniffing dog. Once the canine unit of Officer Keith Debarbieras (“Officer Debarbieras”) and dog Layla arrived, Robertson’s residence was searched. The officers confiscated empty zip-loc baggies, like those on the scene, a plate, razor blade, and a straw along with another small baggie of white powder under the cushion of the sofa. The officers also retrieved some of Robertson’s mail to verify it was in fact his place of residence.
Sergeant Gaudet, Detective Veit, and Officer Debarbieras all gave corroborating testimony of these facts at trial.
Officer Harry O’Neal (“Officer O’Neal”), of the New Orleans Police Department, *635 was qualified as an expert in drug analysis. Officer O’Neal testified he conducted two separate tests on the white powder-like substance found on the scene and in Robertson’s residence. The tests were positive for cocaine.
Robertson and his co-defendant, Holloway, were charged by bill of information, with one count each of possession with the intent to distribute cocaine in violation of La. R.S. 40:967(B)(1). They each pleaded not guilty at their arraignment. After a hearing, the trial court found probable cause and denied motions by both defendants to suppress the evidence.
A twelve-person jury found Robertson guilty of the lesser-included offense of possession of cocaine, and the jury found Holloway not guilty.
The state filed a multiple bill, and Robertson pled not guilty. After a hearing on the multiple bill, the trial court found Robertson to be a second felony offender. The trial court ordered a pre-sentence investigation.
The trial court sentenced Robertson as a second felony offender to seven years at hard labor without the benefit of probation or suspension of sentence. On that same date, the trial court granted Robertson’s oral motion for appeal.
| <¿AWAND DISCUSSION
On appeal, Robertson alleges four assignments of error by the trial court. First, Robertson alleges the trial court erred by finding the warrantless search of his person was justified and denying his motion to suppress the evidence. Second, Robertson alleges the trial court erred by denying his motion to suppress evidence seized from his residence because the search warrant lacked probable cause or in the alternative that a good faith exception was applicable. Third, Robertson asserts the trial court abused its discretion by denying his motion for a mistrial because the prosecutor made inflammatory remarks during closing arguments. Lastly, Robertson asserts the sentence of seven years for possession of cocaine was excessive.
ASSIGNMENT OF ERROR NUMBER 1
Robertson complains the trial court erred by denying his motion to suppress the evidence seized from his sock because the warrantless search was not justified.
The trial court is vested with great discretion when ruling on a motion to suppress. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914.
La.C.Cr.P. art. 215.1 provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and demand of him his name, address, and an explanation of his actions.
This Court in State v. Anderson, 96-0810, p. 2 (La.App. 4 Cir. 5/21/97), 696 So.2d 105, 106, noted:
A police officer has the right to stop a person and investigate conduct when he has a reasonable suspicion that the person is, has been, or is about to be engaged in criminal conduct. Reasonable suspicion for an ^investigatory stop is something less than probable cause; and, it must be determined under the facts of each case whether the officer had sufficient articulable knowledge of particular facts and circumstances to justify an infringement upon an individual’s right to be free from governmental interference. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. An investigative stop must be justified by some objective manifestation that the person stopped is or is about to be en *636 gaged in criminal activity or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct.
(Citations omitted)
In reviewing the totality of the circumstances, the officer’s past experience, training, and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069, p. 4 (La.App. 4 Cir. 5/7/97), 694 So.2d 549, 552.
When a law enforcement officer has probable cause to believe that a person has committed a crime, he may place that person under arrest. Incident to such lawful arrest, the officer may lawfully conduct a full search of the arrestee and the area within his immediate control for weapons and for evidence of a crime. State v. Morgan, 445 So.2d 50, 51 (La.App. 4 Cir.1984).
In State v. Morales, 583 So.2d 129 (La.App. 4 Cir.1991), this Court found that a tip from an anonymous informant was sufficient to create reasonable suspicion to stop the defendant and probable cause to arrest him when the information from the tip was corroborated by independent police work.
Probable cause to arrest exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Wilson, 467 So.2d 503 (La.1985); cert. denied, Wilson v. Louisiana 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Blue, 97-2699 (La.App. 4th Cir.1/7/98), 705 So.2d 1242, writ denied, 98-0340 (La.3/27/98), 716 So.2d 887.
Whether an informant’s tip establishes probable cause to arrest or reasonable suspicion to stop must be considered under the totality |sof the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Corroboration of details of an informant’s tip by an independent police investigation is valuable when applying the totality of the circumstances analysis. State v. Raheem, 464 So.2d 293 (La.1985).
Although the reliability of the informant here was not established at the motion to suppress hearing, corroboration of the informant’s tip was made by the officers. Officer Schnapp testified that his partner, Officer Lampart, observed the defendant conduct what appeared to be a drug transaction prior to the defendant’s arrest and seizure of the black bag from the vehicle.
The defendant argues, however, that the independent police investigation was insufficient to establish probable cause because there was no testimony indicating that the defendant appeared to be nervous or suspicious and because the officers could not identify the object taken out of the black pouch. In support of his claim, defendant likens his case to that in State v. Thornton, 621 So.2d 173 (La.App. 4th Cir.1993), writ denied 93-2109 (La.9/23/94), 642 So.2d 1307, but the case may be distinguished.
In Thornton, this court found that the police lacked probable cause based solely on the officers’ observation of an exchange of money for an unknown object wrapped in white paper between the defendant and another man in an area known for drug trafficking. Neither of the two men attempted to elude the officers or act in an otherwise suspicious manner, and the men were not known to the officers. Yet, unlike Thornton, here, Officer Lampart observed the transac *637 tion after receiving the informant’s tip and establishing a surveillance.
Based on the corroboration of the informant’s tip by Officer Lampart, it appears that the officers had probable cause to believe that the pouch inside the vehicle contained contraband. Therefore, the warrant less search of the vehicle was justified. State v. Tatum, 466 So.2d 29, 31 (La.1985). Once the crack cocaine was found, the officers had probable cause to arrest the defendant.
[Footnotes omitted.]
State v. Bryant, 98-1115, pp. 5-6 (La.App. 4 Cir. 8/4/99), 744 So.2d 108, 110-111.
In the instant case, the corroboration of the informant’s information by independent police surveillance gave the officers not only reasonable suspicion to stop Robertson, but probable cause to arrest him. At the time Detectives Ferrier and Hinrich stopped Robertson and informed him he was under investigation for a|9drug violation there was probable cause to arrest him based on Detective Ferrier’s observance of apparent hand-to-hand drug transactions conducted by Robertson and Holloway coupled with the informant’s tip. Therefore, the seizure of the drugs found in Robertson’s sock was valid based on the facts Detective Ferrier had that Robertson had committed a crime. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 2
Robertson complains the trial court erred in denying his motion to suppress the evidence seized from his residence because the application for the search warrant lacked probable cause to believe that there was contraband in the residence, and the trial court erred in finding that the good faith exception applied if probable cause was lacking.
La.C.Cr.P. ait. 162 provides:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure.
The Louisiana Supreme Court set forth the applicable law in State v. Casey, 99-0023, pp. 3-4 (La.1/26/00), 775 So.2d 1022, 1027-1028, as follows:
A person is constitutionally protected against unreasonable search and seizure of his house, papers and effects. Thus, a search and seizure of such shall only be made upon a warrant issued on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and thing(s) to be seized. U.S. Const. amend. IV; La. Const. art. I, § 5 (1974). The general rule is that probable cause sufficient to issue a search warrant “exists when the facts and circumstances within the affi-ant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.” La. C.Cr. P. art. 162; State v. Johnson, 408 So.2d 1280, 1283 (La.1982). The issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, a fair probability exits that the evidence of a crime will be found in a particular place. State v. Byrd, 568 So.2d 554, 559 (La.1990). Additionally, a search warrant must establish a probable continuing nexus between the place *638 sought to be searched and the property sought to be seized. State v. Weinberg, 364 So.2d 964, 968 (La.1978). Further, an affidavit must contain, within its four corners, the facts establishing the existence of probable cause for issuing the warrant. State v. Duncan, 420 So.2d 1105, 1108 (La.1982).
 The defendant bears the burden of proving that the evidence should be suppressed. La.C.Cr.P. art. 703(D). A trial court’s ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194. In reviewing a trial court’s ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
In U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the U.S. Supreme Court enunciated the “good faith” exception, which held that evidence seized pursuant to a search warrant issued without sufficient probable cause need not be suppressed if the officers who executed it believed it had been validly issued. See State v. Shortridge, 98-2060, pp. 4-6 (La.App. 4 Cir. 12/22/99), 750 So.2d 339, 341.
In the instant case the search warrant application is missing from the record. Robertson does not make any argument concerning the absence of the search warrant application. Rather he argues the application did not provide sufficient facts to establish probable cause to believe that there would be contraband at 3025 lnToledano Street. At the time Detective Ferrier applied for the search warrant, all of the information given to the detective by the confidential informant had been corroborated by independent police work. Detective Ferrier observed a gray Chevy Corsica parked outside of Robertson’s residence; he observed the Chevy Corsica pull up to the location given by the informant; he observed a male, fitting the description given by the informant, exit the vehicle; Detective Ferrier observed the defendant conduct two drug transactions; drugs were found on the defendant’s person at the time of the arrest; and drugs in a bag similar to the one found on Robertson were also found on the scene. Therefore, there was probable cause to believe the informant’s information that more drugs were in the defendant’s residence would be true also. Consequently, Robertson has failed to prove that the evidence seized pursuant to the search warrant should have been suppressed for lack of probable cause. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 3
Robertson complains the trial court abused its discretion by denying his motion for mistrial based on inflammatory remarks made during the prosecutor’s closing argument.
La.C.Cr.P. art. 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the *639 defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
|1s>An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
La.C.Cr.P. art. 775 provides in part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
Mistrial is a drastic remedy, which should be declared when unnecessary prejudice results to the defendant. State v. Lewis, 95-0412 (La.App. 4 Cir. 9/28/95), 662 So.2d 77, 78. The trial court has discretion to determine whether a fair trial is impossible, or whether an admonition is adequate to assure a fair trial when the alleged misconduct does not fit into the provisions for mandatory mistrial, and the ruling will not be disturbed on review absent an abuse of discretion. Id.
During the State’s closing argument the following exchange took place:
STATE: The defense took pictures of the neighborhood. There is one— Those are real people that five in that neighborhood. I mean this is residential. You have got Woodson Elementary just right down the—
DEFENSE: Objection move for mistrial, trying to inflame the jury.
STATE: It’s a fact.
DEFENSE: No, its inflammatory as it relates to what has happened.
COURT: Your words sir, I couldn’t hear exactly what you said.
STATE: I just pointing out the different schools that are right—
COURT: I would sustain that, please.
INSTATE: Well, my point being is that this is a residential neighborhood. This is where people live, and there are people that have an actual stake in that neighborhood, and one person who has no stake in that neighborhood is Mr. Robertson. So, when I told you this was about two people getting caught up in the drug game, I want to correct myself and say it’s about more than that. It’s about people that live in that area around the corner of La-salle and Josephine and it’s about them deserving police protection just like everybody else.
In State v. Mims, 524 So.2d 526, 543 (La.App. 2 Cir.1988), the Second Circuit found that the prosecutor’s comment of “who else in the community are these serious charges to” was in response to defense counsel’s argument that the charges involved in the case were serious. The court found in context the comment was not inflammatory. Therefore, the trial court did not err in denying a mistrial based on the statement.
In the instant case, there were no objections during the closing argument by Holloway’s defense counsel, and that portion of the transcript was not provided. However, the trial court noted that it was defense counsel who made statements about the community in which the drug transactions took place, and that the State’s comment was simply a rebuttal. Based on the information given it does not appear the trial court erred in denying Robertson’s motion for mistrial. Addition *640 ally, the comment does not fit into one of the criteria given in La.C.Cr.P. art. 770, and therefore the trial court had great discretion in deciding to grant or deny the motion. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 4
Robertson complains the trial court imposed an excessive sentence. Specifically, Robertson’s sentence of seven years for possession of cocaine as a second felony offender was closer to the maximum for the offense.
i4 Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless and purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739, 751 (La.1992).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Walker, 96-112, p. 4 (La.App. 3 Cir. 6/5/96), 677 So.2d 532, 534-535, citing, State v. Howard, 414 So.2d 1210 (La.1982).
La. R.S. 15:529.1(A)(2)(a) provides:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one half the longest term and not more than twice the longest term prescribed for a first conviction.
liiiLa. R.S. 40:967(0(2) provides that any person who commits the violation of possession of a controlled dangerous substance shall be imprisoned for not more than five years.
In State v. Joseph, 99-1161 (La.App. 5 Cir. 3/22/00), 759 So.2d 141 the Fifth Circuit found a sentence of eight years for a defendant convicted of possession as a second offender was not excessive.
In the instant case, the sentence range the defendant faced as a second offender was a minimum of two and one-half years and a maximum of ten years. The trial court considered the information found in the pre-sentence investigation before sentencing Robertson. The court considered the fact that the defendant’s previous felony conviction was a drug offense. Also, the trial court considered the fact that Robertson was on probation when he committed the offense in the instant case. Robertson has failed to prove the trial court abused the liberal discretion allowed in sentencing. This assignment of error is without merit.

*641
CONCLUSION

For the above mentioned reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.