ROLAND L. BELSOME, Judge.
hThe Defendant, Patrick Chaplain, was charged by bill of information with possession of cocaine in violation of La. R.S. 40:967(C)(2).[1] At arraignment he entered *1276 a plea of not guilty. Subsequently, the Defendant filed several pretrial motions, including two motions to suppress.[2] The trial court denied the motions to suppress and found probable cause to substantiate the charges.
The matter proceeded to trial, but resulted in a hung jury. After a second jury trial, the Defendant was found guilty of possession of cocaine. He filed a motion for appeal and motion for post-verdict acquittal. The trial court denied the motion for post-verdict acquittal and sentenced the Defendant to three years at the Department of Corrections with credit for time served. The trial court also fined him thirty-five dollars ($35.00) in court costs.
_JjThe State filed a multiple offender bill charging the Defendant as a third felony offender. Following a multiple bill hearing, The Defendant was adjudicated a third felony offender pursuant to La. R.S. 15:529.1. The trial court then vacated its previous sentence and sentenced him to five years at hard labor, with credit for time served, and assessed thirty-five dollars ($35.00) in cost costs. The trial court also ordered that the five year sentence be served without benefits.

ERRORS PATENT

A review of the record for errors patent reveals that the trial court’s imposition of a five year sentence “without benefits” is illegal.[3] See, La.C.Cr.P. art. 882; La.C.Cr.P. art. 920. La. R.S. 15:529.1(G) provides that “[a]ny sentence imposed under the provisions of this section [the Habitual Offender Law] shall be at hard labor without the benefit of probation or suspension of sentence.” Accordingly, this Court amends the sentence to allow for the possibility of parole in accordance with the applicable sentencing provisions.[4]

STATEMENT OF FACT

Officer Christian Recile and Detective Jules Martin were working a paid detail for the Lakeview Crime Prevention District in separate vehicles. Officer Recile was in a marked police vehicle, and Detective Martin was in an unmarked police car. At approximately 1:30 a.m., they observed the Defendant walking eastbound on Harrison Avenue and across West End Boulevard. The Defendant was stumbling on the “sidewalk area,” and they suspected that he was either |sintoxicated or ill and decided to investigate. The officers subsequently drove towards him, parked, and exited their vehicles.
*1277 When the officers approached the Defendant he immediately became verbally combative and aggressive. The Defendant had his hands in his front pants pockets. The officers advised him several times to take his hands out of his pockets, but he repeatedly refused, and he continued to be combative with the officers. At one point during the officers’ investigation, the Defendant removed his left hand from his pocket to grab hold of a cigarette. Detective Martin grabbed the Defendant’s right arm which was met with resistance. The officers restrained the Defendant with handcuffs at which time he dropped a packet of cocaine. The Defendant was subsequently Mircmdized and arrested for possession of cocaine, public intoxication, and resisting arrest.[5]

DISCUSSION

On appeal the Defendant raises two assignments of error: 1) the trial court erred in denying the motion to suppress the cocaine; and 2) the trial court erred in finding the Defendant a third offender and imposing an excessive sentence.

ASSIGNMENT OF ERROR NUMBER 1

As his first assignment of error, the Defendant contends that the trial court erred in denying his motion to suppress the evidence because the officers lacked reasonable suspicion to stop and/or lacked probable cause to arrest him and thus violated his Fourth Amendment rights against illegal searches and seizures.
On a hearing on a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D). |4The trial court is vested with great discretion when ruling on a motion to suppress. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The district court’s findings of fact on a motion to suppress are reviewed under a clearly erroneous standard, and its ultimate determination of Fourth Amendment reasonableness is reviewed de novo. State v. Pham, 2001-2199, p. 3 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218; U.S. v. Seals, 987 F.2d 1102, 1106 (5 Cir.1993).
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. U.S. Const. Amend. IV; La. Const. Art. 1, § 5; State v. Francis, 2010-1149, p. 4 (La.App. 4 Cir. 2/16/11), 60 So.3d 703, 708 writ denied, 2011-0571 (La.10/7/11), 71 So.3d 311. However, it is well established that a police officer may conduct a brief investigatory stop when the officer has a reasonable articulable suspicion of criminal activity. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 8, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983). Under the Terry standard, as codified in Article 215.1, police officers may stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. La.C.Cr.P. art. 215.1(A); State v. Fauria, 393 So.2d 688, 690 (La.1981).
In State v. Jenkins, unpub., Case No. 2011-0280, p. 3 (La.App. 4 Cir. 9/14/11), 2011 WL 9160344, the Fourth Circuit found that arresting officers had reason to detain a subject where he appeared “very intoxicated” and when approached by the officers, he attempted to leave but could “barely walk.” Id. The Jenkins Court held that based on that information “the *1278 officers possessed [,.¡reasonable suspicion that [the subject] was intoxicated and could be a danger to himself o[r] others, a violation of Section 54-405 of the New Orleans City Code.” Id.
In the present case, similar to Jenkins, the officers had a reason to believe the Defendant was publically intoxicated pursuant to Section 54-405 of the New Orleans Municipal Code.[6] The officers testified that they initially noticed the Defendant because he was stumbling across West End Boulevard and Harrison Avenue late at night. After observing the Defendant stagger, sway side to side, and display an overall lack of balance and coordination, the officers thought the Defendant was either ill or intoxicated. Detective Martin stated they decided to stop the Defendant out of concern that he may stumble into the street and get hit by a car. Detective Martin also testified that West End Boulevard has consistent traffic throughout the night.
The officers further testified that upon approaching the Defendant, it became apparent that he was intoxicated because he became verbally combative toward them and slurred his speech. The officers’ suspicions were further corroborated when the Defendant began interacting with the officers. The officers stated that they detected alcohol on the Defendant’s breath. The Defendant also admitted to the officers that he was in the process of leaving a bar. As such, based on the totality of the circumstances, the officers had reason to believe that the Defendant [ ^was intoxicated and could possibly present a risk of harm to himself and/or others. The officers therefore articulated reasonable suspicion to conduct an investigatory stop.
If an officer stops a person pursuant to La. C.C.P. art. 215.1(A), the officer may conduct a limited pat down frisk for weapons if the officer reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B); State v. Curtis, 96-1408, pp. 2-3 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1289. The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger. State v. Hughes, 99-2554, pp. 6-7 (La.App. 4 Cir. 5/31/00), 765 So.2d 423, 427; State v. Williams, 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144; State v. Smith, 94-1502, p. 5 (La.App. 4 Cir.1/19/95), 649 So.2d 1078, 1082.
In State v. Kelly, 2006-0475 (La.App. 4 Cir. 11/21/06), 946 So.2d 222, a police officer assigned to patrol a public housing project received complaints from several residents of the project, an area well known for illegal drug activity, of drug trafficking in a specific hallway of a particular building. While on foot patrol in the project, the officer saw the Defendant walking out of the hallway indicated by the complaining residents while looking down at an object in his right hand. Id. at p. 2, 946 So.2d at 224. When the Defendant saw the uniformed officer, he immediately closed his hand, put his hand in his pocket and moved in a nervous manner. The officer initiated an investigatory stop of the Defendant and, for safety reasons, asked him to remove his hand from his pocket. The Defendant gave his name but continued to move away from the officer with his hand in his pocket. The officer *1279 moved to force the Defendant to remove his hand from his pocket. At that point, the Defendant opened his hand to reveal a syringe and a piece of foil |7containing heroin. The officer then placed the Defendant under arrest. Id. at pp. 2-3, 946 So.2d at 224.
On appeal, this Court determined that the police officer was justified in asking the Defendant to remove his hands from his pockets, and in taking action to insure the Defendant complied with that request, since the officer was acting to insure his own safety. Id. at p. 5, 946 So.2d at 225-226.[7]
Here, like in Kelly, the officers acted reasonably in removing the Defendant’s hand from his pants pocket. The record provides that as soon as the officers approached the Defendant, he thrust both his hands in his pockets and immediately became belligerent and verbally aggressive towards the officers. The officers repeatedly ordered the Defendant to remove his hands from his pockets for officer safety, but he refused to comply and continued to make combative remarks to the officers. Officer Recile stated that it was normal police procedure to ask a subject to remove his hands from his pockets for officer safety. Additionally, both Officer Recile and Detective Martin testified that in their experience when a subject refuses to comply with such a request, it increases the suspicion that the subject is hiding something.
Although both officers stated that they never actually observed a weapon or a bulge other than the Defendant’s hands, Detective Martin testified that he suspected the Defendant was armed because of the manner in which his hands were tucked into his pockets and because of his continued refusal to remove his hands. Detective Martin explained that it would have been possible for the Defendant to hide a small caliber weapon or knife in his pockets. Although he | ^removed one hand from his pocket to grab hold of a cigarette, one hand remained concealed. Considering the Defendant’s defiant attitude and his continuous refusal to remove his hand from his pocket, the officers had reasonable basis to believe that the Defendant was hiding something that could pose a threat to their safety. Accordingly, Detective Martin was justified in removing the Defendant’s hand from his pocket.[8]
Additionally, search incident to arrest is a long recognized exception to the warrant requirement. State v. Parker, 2006-0053, p. 3 (La.6/16/06), 931 So.2d 353, 355. When a law enforcement officer has probable cause to believe that a person has committed a crime, he may place that person under arrest. Incident to that lawful arrest, the officer may legally conduct a full search of the arrestee and the area within his immediate control for weapons *1280 and for evidence of a crime. State v. Robertson, 2002-0156, p. 7 (La.App. 4 Cir. 2/12/03), 840 So.2d 631, 636. Probable cause to arrest exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Wilson, 467 So.2d 503, 515 (La.1985); State v. Elliot, 407 So.2d 659, 661 (La.1981).
In State v. Williams, 2010-1023 (La.App. 4 Cir. 3/16/11), 62 So.3d 244 writ denied, 2011-0799 (La.10/14/11), 74 So.3d 217, the police officer noticed that the Defendant had trouble standing and thought that he was sick. After approaching | athe Defendant the officer realized that the he was “more intoxicated than sick.” Id. at p. 2, 62 So.3d at 245. The officer testified that the Defendant had bloodshot eyes, smelled of alcohol, was uncoordinated with his bicycle, and slurred his words. The officer then placed the Defendant under arrest for public intoxication. The officer testified he arrested the Defendant, instead of issuing a citation, because he believed that the Defendant could pose a threat to himself and others. A search incident to that arrest revealed crack cocaine in the Defendant’s sock. The Defendant moved to suppress the evidence claiming his arrest was unlawful. The trial court denied the motion to suppress.
On appeal, this Court affirmed the trial court ruling, finding that the officer had probable cause for the arrest. Id. at p. 9-11, 62 So.3d at 249. Prior to reaching its conclusion, the Williams Court examined earlier jurisprudence discussing arrests for public intoxication. The Fourth Circuit also emphasized that in reviewing a trial court’s ruling on a motion to suppress, an appellate court must evaluate whether the arresting officer acted in good faith and has articulated sufficient facts to establish probable cause to arrest; and in doing so, the reviewing court must give deference to the trial court’s factual findings.
In the instant case, the record sufficiently establishes that the officers were acting in good faith in arresting the Defendant. Similar to Williams, the officers initially approached the Defendant because they believed he was ill or intoxicated. Both officers testified and communicated their observations and concerns.
Thus, considering the vast discretion the trial court has in ruling on a motion to suppress and the testimony given by the officers who were present at the time of incident, there are sufficient articulable facts to support a finding of probable cause for arresting the Defendant for public intoxication.
11 ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, the Defendant argues that the trial court erred in adjudicating him a triple offender and imposing an excessive sentence.
Insufficient Evidence — Triple Offender
The Defendant claims that the State failed to meet its burden of proving he was a third felony offender because it failed to show that his guilty pleas in the predicate convictions were knowingly and voluntarily entered into.
To obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the Defendant is the same person convicted of that felony. State v. Neville, 96-0137, p. 7 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 538-539; State v. Payton, 2000-2899, p. 6 (La.3/15/02), 810 So.2d 1127, 1130-1131. There are various methods available to prove that the Defendant is the same person convicted of the prior felony offense, such as testimony from wit *1281 nesses, expert opinion regarding the fingerprints of the Defendant when compared with those in the prior record, photographs in the duly authenticated record, or evidence of identical driver’s license number, sex, race and date of birth. State v. Henry, 96-1280, p. 7 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 326; State v. Wolfe, 99-0389, pp. 4-5 (La.App. 4 Cir. 4/19/00), 761 So.2d 596, 599-600.
In Louisiana, the Supreme Court adopted a scheme for burdens of proof in habitual offender proceedings in State v. Shelton, 621 So.2d 769 (La.1993). State v. Francois, 2002-2056, p. 6 (La.App. 4 Cir. 9/14/04), 884 So.2d 658, 663. That scheme has been summarized as follows:
If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that the defendant was | ^represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a ‘‘perfect” transcript of the Boykin colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an “imperfect” transcript. If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that the defendant’s prior guilty plea was informed and voluntary.
Francois, 2002-2056, p. 6, 884 So.2d at 663 (citing Shelton, 621 So.2d at 779-780 (La.1993); State v. Winfrey, 97-427, p. 30 (La.App. 5 Cir 10/28/97), 703 So.2d 63, 80; and quoting State v. Conrad, 94-232, pp. 3-4 (La.App. 5 Cir. 11/16/94), 646 So.2d 1062, 1064).
As noted above, the State charged The Defendant as a habitual offender based on guilty pleas he entered into in 1998 for simple burglary and 2004 for theft of goods between $100 and $500.
To support the predicate conviction of theft of goods the State offered: the bill of information charging the Defendant on February 20, 2002 .in Jefferson Parish in Case No. 02-0878; the finger print sheet; a minute entry reflecting that the Defendant entered a plea of guilty on January 7, 2004; and the guilty plea form executed by the Defendant on January 7, 2004. Both the minute entry and the plea form provide that the Defendant was represented by counsel and that the Defendant was apprised of his rights to a jury trial, against self-incrimination, and to confront his accusers.
|1gIn support of the simple burglary conviction the State introduced the following evidence: a guilty plea/waiver of rights form executed by the Defendant on May 20, 1998 in Jefferson Parish in Case No. 95-06171; a minute entry demonstrating the Defendant pled guilty on May 19,1998; and the bill of information charging the Defendant with simple burglary on November 7, 1995. Although the plea form indicates the Defendant was advised of his Boykin rights and represented by an attorney, the May 19, 1998 minute entry does not detail the colloquy.
The State also called Officer Joseph Pollard, an expert in taking and analyzing fingerprints. Officer Pollard testified that the finger prints contained in the arrest registry relating to both his simple burgla *1282 ry conviction (Case No. 95-0617) and theft of goods conviction (Case No. 02-0878), matched the finger prints he took of the Defendant earlier that day.
The Defendant further argues that because the minute entry in Case No. 95-06171 does not specify the rights the Defendant waived or that he knowingly and intelligently waived those rights, the State failed to prove his conviction plea for simple burglary and did not meet its burden in demonstrating that the Defendant is a triple offender.
The State contends, however, the Defendant is prohibited from challenging a prior conviction because he did not file a written response to the multiple offender bill or object to a constitutional basis at the hearing pursuant to La. R.S. 15:529.1(D)(1)(b).[9]
| isThe State is correct that the Defendant did not file a written response to the multiple bill of information charging him as third felony offender. However, the Defendant did object to the sufficiency of the State’s evidence relating to the 1998 guilty plea of simple burglary. The Defendant argued at the hearing that the State did not prove beyond a reasonable doubt that he was the person that-pled guilty in 1998 to simple burglary because the fingerprint card, which was photocopied on the back of the bill of information, was unsigned and undated. However, that issue has not been raised on appeal.
At the hearing on the multiple bill, the Defendant did not make the argument that the 1998 minute entry did not sufficiently demonstrate a voluntary waiver of rights. As such, the Defendant cannot raise this issue now on appeal. See, State v. Taylor, 2012-0114, p. 7 (La.App. 4 Cir. 11/28/12), 104 So.3d 679, 684 (where an issue is not presented in writing or orally during multiple offender proceedings, it cannot be raised on appeal).
*1283 | uExcessive Sentence
The Louisiana Supreme Court, in State v. Smith, 2001-2574, pp. 6-7 (La.1/14/03), 839 So.2d 1, 4, set forth the standard for evaluating a claim of excessive sentence:
Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o law shall subject any person to ... excessive ... punishment.” Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. (Emphasis added) (citations omitted).
For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. 1, § 20, i.e., when it imposes “punishment disproportionate to the offense.” State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608 (quoting State v. Sepulvado, 367 So.2d 762, 767 (La.1979)).
Under the Habitual Offender Law, if a person is convicted of a felony, then subsequently commits another felony, the punishment for the subsequent conviction may be enhanced. See, La. R.S. 15:529.1.[10] The precise ranges of | ^possible penalties are set out by the statute and depend upon the nature of the offense and the number of previous convictions.
Because the Defendant’s third felony offense is possession of cocaine and punishable by “imprisonment with or without hard labor for not more than five years,” the Defendant was exposed to a minimum sentence of forty months and a maximum sentence of ten years. See, La. R.S. 40:967(0(2); La. R.S. 15:529.1(A)(3)(a). The five year sentence the Defendant received was thus within the statutory range.
Nevertheless, the Defendant claims that the sentence is unconstitutionally excessive considering the fact that he is fifty-six years old with no prior incarcerations; a small amount of cocaine was found on him; and his prior convictions (simple burglary in 1998 and theft of goods in 2004) were non-violent and separated by several years.[11] He also noted that he is not a *1284 danger to the public, and a substance abuse treatment would be a more effective than incarceration.
The standard for review of a claim that a mandatory sentence imposed under La. R.S. 15:529.1 is excessive is well-settled. Recently, this Court in State v. Landfair, 2010-1698, p. 17-18 (La.App. 4 Cir. 7/20/11), 70 So.3d 1061, 1072, reviewed the nature of the habitual felony offender sentencing scheme and the standard for departing from it:
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of | ^punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. However, the entire Habitual Offender Law has been held constitutional, and, thus, the 'minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. There must be substantial evidence to rebut the presumption of constitutionality. To rebut the presumption that the mandatory minimum sentence is constitutional, the Defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. “Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.” (citations omitted).
Id. (quoting State v. Phillips, 2010-0582, pp. 6-7 (La.App. 4 Cir. 2/17/11), 61 So.3d 130, 134-135 and State v. Rice, 2001-0215, p. 5-6 (La.App. 4 Cir. 1/16/02), 807 So.2d 350, 354).
In the present case, the Defendant did not urge a downward deviation at the time of sentencing, nor did he provide the trial with any reason why the five year sentence is excessive as applied to him. In his motion to reconsider sentence, the Defendant simply stated that the sentencing guidelines set forth in La. C.C.P. art. 894.1 militate in his favor.
The record shows an adequate factual basis for the sentence imposed. At the original sentencing hearing, although the trial court did not specify factors it took into account in imposing three year sentence, the trial court did state that it considered the guidelines set forth in La. C.C.P. art. 894.1. Also, in sentencing the Defendant as a multiple offender, the trial court acknowledged the Defendant’s criminal history (his prior convictions for simple burglary and theft as well as his conviction for possession of cocaine) prior to imposing the five year sentence.
[17As noted above, a trial judge has vast discretion to sentence within statutory limits, and under the standard just recently articulated by the Louisiana Supreme Court in State v. Colvin, a trial court “abuses its discretion only when it ... imposes ‘punishment disproportionate to the offense.’” 2011-1040, p. 7 (La.3/13/12), 85 So.3d 663, 667-668. In making that determination, the court of appeal must consider “whether the penalty is so disproportionate to the crime committed as to shock our sense of justice.” Id. Further, on appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. Smith, 2001-2574, pp. 6-7, 839 So.2d at 4.
Here, because the five year sentence is within the range statutorily provided by *1285 La. R.S. 40:967(0(2) for possession of cocaine and La. R.S. 15:529.1(A)(3)(a) for a triple offender, it is not shocking to the sense of justice. In fact, the Fourth Circuit has recently upheld similar sentences for multiple offenders who were convicted of possession of cocaine.[12] Further, the Defendant has failed to show by clear and convincing evidence that he is “exceptional” such that the trial court is required to deviate from the sentencing standards set forth in La. R.S. 15:529.1. As such, we cannot find that a five year sentence for triple offender is not unconstitutionally excessive.
1 ^CONCLUSION
For the reasons discussed, we affirm Patrick Chaplain’s conviction and amend his sentence to five years at hard labor without the benefit of probation or suspension of sentence.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED

. La. R.S. 40:967(C)(2) provides:
C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in *1276 the course of his professional practice, or except as otherwise authorized by this Part.
[[Image here]]
(2) Any person who violates this Subsection as to any other controlled dangerous substance shall be imprisoned with or without hard labor for not more than five years and, in addition, may be sentenced to pay a fine of not more than five thousand dollars.

. The record provides that the Defendant filed a motion to suppress the evidence and a motion to suppress a statement.

. See, State v. Green, 93-1432, p. 6 (La.App. 4 Cir. 4/17/96), 673 So.2d 262, 266 (amending the Defendant's sentence to delete the requirement that sentence be served without benefit of parole, probation, or suspension of sentence as an error patent)

. Prior to being taken into custody the Defendant was treated for cuts he sustained during his arrest.

. The ordinance provides:
It is unlawful for any person to appear in a public place manifestly under the influence of alcohol, narcotics or other drugs, not therapeutically administered, to the degree that he may endanger himself or other persons or property.

. See also, State v. Gray, 99-47 (La.App. 5 Cir. 6/1/99), 738 So.2d 668 (finding that after stopping the Defendant and three other juveniles for a suspected curfew violation, the officer was justified in handcuffing the Defendant to perform a weapons frisk where the Defendant refused to comply with repeated requests by the officer to approach his vehicle and remove his hands from his pocket).

. See also, State v. Rabon, 2000-935, p. 1 (La.6/30/00), 764 So.2d 944, 945 (noting that an otherwise inexplicable failure to remove a hand from a pocket may give rise to reasonable suspicion for a weapons search); State v. Boyer, 2007-0476, p. 21 (La.10/16/07), 967 So.2d 458, 471 ("Officer Guillotf] was trained for the purpose of officer safety, to order persons in these situations to remove their hands from their pockets.... the Defendant’s hand was not visible and a reasonably prudent person would be warranted in believing that his safety or that of others was in danger”).

. La. R.S. 15:529.1(D) provides in relevant part:
D. (l)(a) If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he [the defendant] denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and he shall be given fifteen days to file particular objections to the information, as provided in Subpara-graph (b) of this Paragraph. The judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies as set forth in the information, (b) Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction alleged in the information was obtained in violation of the constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

. La. R.S. 15:529.1 states, in relevant part:
A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
[[Image here]]
(3) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(a) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction.

. The Defendant also argued the trial court’s sentence was excessive because it denies him parole eligibility. This argument has merit and was addressed earlier as a patent error.

. See, State v. Kelly, 2008-0200, p. 5 (La.App. 4 Cir. 6/4/08), 986 So.2d 880, 883 (finding that an eight year sentence for second offender was not unconstitutionally excessive); State v. Robertson, 2002-0156, p. 15 (La.App. 4 Cir. 2/12/03), 840 So.2d 631, 640 (finding that the trial court did not abuse its discretion in sentencing the Defendant as second offender to seven years, where the Defendant faced a sentencing range between thirty months and ten years).