Judge Rosemary Ledet
hThe State seeks review of the district court’s November 29, 2016 ruling, which granted the motion to suppress filed by the defendant, Dejon Miguel. For the reasons that follow, we grant the State’s writ and reverse the district court’s ruling.
STATEMENT OF THE CASE
Mr. Miguel was charged by bill of information with illegal carrying of a weapon, a violation of La. R.S. 14:95. He filed a motion to suppress. Following multiple hearings, the district court granted his motion to suppress. The State’s application for supervisory review followed.
STATEMENT OF THE FACTS
On September 15, 2014, New Orleans Police Department (“NOPD”) Officers Sherife Davis and Edwin Cooper were on uniformed patrol near the intersection of Crozat and Bienville Streets in New Orleans, Louisiana. As they pulled up to that intersection, they observed a group of individuals standing outside a convenience store. Someone in the group was smoking, and the officers smelled the odor of marijuana.[1] Upon spotting the officers, Jacob Banks, who was a | ¿member of the group, turned his back and briskly walked into the convenience store. As he did so, the officers observed him make “a discarding movement as soon as he got into the door.”[2]
The officers followed Mr. Banks into the store. Mr. Banks walked briskly towards Mr. Miguel, who was standing in back of the store where food orders are placed, and pretended to order food.[3] According to the police report, “[t]he officer noticed the defendant [Mr. Miguel] holding his waistband as if he was holding a weapon from falling and then he [Officer Cooper] did a quick pat down.”[4] As a result of the pat down, Officer Cooper recovered a weapon on Mr. Miguel.[5] Mr. Miguel initially indicated that he had paperwork for the firearm, but it was not a concealed weapons permit. Thus, the officers arrested him.
Although he did not see Mr. Miguel committing any crime,[6] Officer Davis testi- *428 fíed that “one of the issues with that corner is you will have some [perpetrators] that are only going to have drugs and you will have some that will only have guns. And when you have that situation, then you kind of have | ..¡protection for those who have the drugs are going to have guns [sic].” Officer Davis further testified that “there’s been lots of shootings there,” and what drew his attention to Mr. Miguel was “only that we were arresting [Mr.] Banks inside the store and he [Mr. Banks] immediately walked directly to [Mr. Miguel].” Officer Davis still further testified:
Even without [a perpetrator] being arrested, we’re going to make ourselves safe. That was the purpose of the pat down. Had there been no weapon involved, he would not have been detained or anything further. He was not the target of our investigation.
At the conclusion of the first hearing, the district court expressed concern with respect to whether Mr. Miguel’s action of grabbing his waistband was sufficient for reasonable suspicion and requested further briefing. Following a subsequent hearing, the district court granted Mr. Miguel’s motion to suppress, finding that the officers lacked reasonable suspicion to pat down Mr. Miguel.
DISCUSSION
Both the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. State v. Dimes, 16-0129, p. 6 (La.App. 4 Cir. 6/22/16), 196 So.3d 1263, 1267. “Ordinarily, when evidence is seized without a warrant, the burden is on the state to demonstrate that a search is justified by some exception to the warrant requirement.” Id., 16-0129 at pp. 6-7, 28 So.3d at 506 (citing La. C.Cr.P. art. 703 D; State v. Bell, 09-0674, p. 4 (La.App. 4 Cir. 12/9/09), 28 So.3d 602, 506). District courts are vested with great discretion when ruling on a motion to suppress; hence, a district court’s ruling on such a motion will not be disturbed absent an abuse of that discretion. See State v. Lewis, 11-0889, p. 11 (La.App. 4 Cir. 2/1/12), 85 So.3d 150, 157.
|4The Louisiana Legislature has codified the principle enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), authorizing a stop based on reasonable suspicion, in La. C.Cr.P. art. 215.1(A), which provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
The narrow issue presented is whether the officers possessed reasonable suspicion for the investigatory stop.[7] Summarizing the jurisprudence regarding reasonable suspicion necessary to conduct a pat down frisk, this court in State v. Du *429 plessis, 07-1005, pp. 8-9 (La.App. 4 Cir. 12/19/07), 974 So.2d 65, 70 stated:
[I]n Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the defendant was a patron of a tavern in which a search warrant was executed, which authorized the search of the tavern and the bartender. A pat down frisk for weapons was conducted of all the tavern patrons, and drugs were found on the defendant. Finding no basis to conduct a pat down frisk of the defendant, the Supreme Court reasoned that “[t]he ‘narrow scope’ of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place. Ybarra, 444 U.S. at 92-94, 100 S.Ct. at 343. The Court also noted that the officers could not articulate any specific basis for suspecting that the defendant was armed, dangerous, or possessed contraband.
Two years later, the Supreme Court in Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), held that officers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted. The execution of a warrant to search for narcotics, the Court reasoned, is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. Summers, 452 U.S. at 703, 101 S.Ct. at 2594. The Court further reasoned that the risk of harm to both the police and to occupants is minimized if the officers routinely exercise unquestioned command of the situation. Id. Distinguishing Ybarra, the Court stressed that the defendant in Ybarra did not raise any question regarding the validity of the detention and noted that the issue in Ybarra was only whether the search was valid. Summers, 452 U.S. at 695, 101 S.Ct. at 2590, n. 4.
Unlike the officers in Ybarra, the officers in this ease articulated a specific basis for suspecting that Mr. Miguel was armed, as Officer Davis testified that Mr. Miguel was observed grabbing his waistband, which, in his experience, could indicate that Mr. Miguel was concealing a weapon.
Additionally, this court has recognized the following principles regarding reasonable suspicion:
Reasonable suspicion for an investigatory stop “is something less than probable cause for arrest.” State v. Fogan, 609 So.2d 1016, 1018 (La. App. 4th Cir.1992). See also [Minnesota v.] Dickerson, 508 U.S. [366] at 373, 113 S.Ct. 2130 [124 L.Ed.2d 334 (1993) ]; Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). This review is “an objective inquiry into the totality of the circumstances surrounding the encounter,” State v. Dumas, 00-0862, p. 2 (La. 5/4/01), 786 So.2d 80, 81 (citing State v. Kalie, 96-2650, p. 3 (La. 9/19/97), 699 So.2d 879, 881), and calls for consideration of whether “the facts available to the officer at the moment of the seizure ... warrant a man of reasonable cause in the belief that the action taken was appropriate.” Terry, 392 U.S. at 21-22, 88 S.Ct. 1868 (internal quotations and punctuation omitted)(emphasis added).
“[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.” Terry, 392 U.S. at 21, 88 S.Ct. 1868. See also [State v.] Francis, 10-1149 at p. 6, [ (La. App. 4 Cir. 2/16/11) ] 60 So.3d [703] at 709. “An inchoate, unparticularized hunch is insufficient grounds for detention under *430 [La.C.Cr.P. art.] 215.1[A].” [State v.] Denis, 96-0956 at p. 4, [ (La. App. 4 Cir. 3/19/97) ], 691 So.2d [1295] at 1297. It is less demanding, however, “not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.” White, 496 U.S. at 330, 110 S.Ct. 2412.
Officers can consider whether the person attempted to flee or appeared nervous at the sight of police officers. See [State v.] Johnson, 94-1170 at p. 5 [ (La. App. 4 Cir. 8/23/95) ], 660 So.2d [942] at 947. Additionally, officers can weigh the reputation of the area being patrolled, see State v. Dappemont, 98-0446, p. 12 (La.App. 4 Cir. 3/17/99), 734 So.2d 736, 742, as well as other cumulative information available to the officer as a result of his training, experience, and common sense. See Terry, 392 U.S. at 27, 88 S.Ct. 1868; State v. Boyer, 07-0476, p. 17 (La. 1 0/16/07), 967 So.2d 458, 469-470; [State v.] Isidore, 00-2781 at p. 4 [ (La. App. 4 Cir. 5/23/01) ], 789 So.2d [79] at 83.
State v. Carter, 13-1452, pp. 8-9 (La.App. 4 Cir. 12/19/13), 131 So.3d 479, 487-88.
Likewise, in State v. Chaplain, 12-1012, p. 6 (La.App. 4 Cir. 5/29/13), 114 So.3d 1274, 1278, this court recognized that an officer may conduct a pat down for weapons during an investigatory stop if the officer has a reasonable belief that the subject is armed. This court further held that “[t]he officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger.” Id. (citing State v. Hughes, 99-2554, pp. 6-7 (La.App. 4 Cir. 5/31/00), 765 So.2d 423, 427; State v. Williams, 98-3059, p. 4 (La. App. 4 Cir. 3/3/99), 729 So.2d 142, 144; State v. Smith, 94-1502, p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082).
Additionally, “[t]he relevant question with respect to self-protective searches conducted by the police ‘is not whether the police officer subjectively believes he is in danger, or whether he articulates that subjective belief in his testimony at a suppression hearing,’ but whether ‘a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of other [persons] was in danger.’ ” State v. Cure, 11-2238, p. 7 (La. 7/2/12), 93 So.3d 1268, 1272 (quoting Boyer, 07-0476 at p. 20, 967 So.2d at 471).
Based upon Officer Davis’ testimony that he and his partner were in pursuit of Mr. Banks, who had discarded an object that the officers believed to be either drugs or a weapon, and his observation of Mr. Banks walking briskly and directly [7towards Mr. Miguel, it was objectively reasonable for Officer Cooper to pat down Mr. Miguel for officer safety purposes as Officer Davis arrested Mr. Banks. Officer Davis testified that the area was known for shootings and drug trafficking, and he and his partner had observed Mr. Miguel holding his waistband, which in his experience could indicate that Mr. Miguel was armed.
In sum, the district court abused its discretion in granting Mr. Miguel’s motion to suppress. Accordingly, the district coui't’s ruling is reversed.
WRIT GRANTED

. Officer Davis testified that “[s]omeone on the corner was smoking outside the store in front of the door.” The statement was not clarified; it is unclear whether the individual was smoking a marijuana or tobacco cigarette.

. The officers discovered a weapon on top of the trash can or bin near the front door to the store and determined that it was discarded by Mr. Banks, who ultimately was arrested.

. The district court asked Officer Davis whether Defendant and Banks were "together”, and Officer Davis responded in the negative.

. Officer Davis testified that a pat down was a "safety check for any weapons that could harm us while we’re investigating.”

. When asked whether Officer Davis observed the outline of an L-shape of a weapon, he responded in the negative.

. Officer Davis acknowledged the following facts;
*428 • There was no concerned citizen complaints regarding Mr. Miguel;
• No confidential informant provided information to officers regarding criminal activity relative to Mr. Miguel;
• There were no attachments for Mr. Miguel at that time;
• Mr. Miguel was not observed engaging in any illegal activity inside the store;
• Mr. Miguel did not flee from the officers; and
• Mr. Miguel did not give Officer Cooper permission to search him.

. A preliminary issue the district court addressed is whether, for purposes of La. C.Cr.P. art. 215,1, the convenience store was a “public place.” In his response to the State’s writ application, the defendant does not dispute that the convenience store, which was open to the public, was a public place.